Cite as 2023 Ark. 157

# SUPREME COURT OF ARKANSAS
**No.** CR–22–776

| | | |
|---|---|---|
| | | **Opinion Delivered:** November 2, 2023 |
| JASON BRIDGES | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-20-2402] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE KAREN D. WHATLEY, JUDGE |
| | | AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Jason Bridges was convicted of capital murder, aggravated robbery, theft of property, and a firearm sentencing enhancement in connection with the shooting death of Jeremy Parks. Bridges was sentenced to an aggregate term of life imprisonment without parole plus ten years. For reversal, he argues that (1) the State failed to negate his justification defense, (2) the circuit court abused its discretion in denying his motion for mistrial, and (3) the circuit court gave an erroneous jury instruction on justification. We affirm.

## I. *Facts*

Keelon Shorter testified that in May 2020, he and his close friend, victim Jeremy Parks, had finished Job Corps. They lived with Shorter's aunt in Little Rock. Shorter explained that while at Job Corps, he and Parks had met Bridges. About one week before Parks died, he had called Bridges to buy marijuana from him. Parks, Shorter, and Shorter's cousin, Alec Riney, pooled their money to purchase the marijuana. The sale occurred in front of the aunt's residence. Later that night, Bridges returned looking for Shorter. When

Shorter came to the front of the house, Bridges said, "I should take your life right now. You gave me fake money." Shorter claimed that it must have been a misunderstanding, but Bridges hit him on the side of the head with a gun. At that point, Shorter's aunt came outside, and Bridges left.

Then, on May 21 around 5:00 p.m., Shorter was outside his aunt's house and saw a car drive by. Bridges got out of the car, walked toward Shorter, was armed with a gun in his pocket, and asked "what [he] got on [him]." Shorter gave Bridges his cell phone, his shoes, and forty-four dollars. Shorter's aunt and Riney came outside to diffuse the situation. Bridges started to leave, and then Parks walked outside to take the trash out. Bridges walked over and hit Parks on the side of the head with his gun. Parks hit Bridges back, and as Shorter ran over to help, Bridges was already shooting his gun. Parks fell to the ground. Shorter put Bridges in a headlock and attempted to take the gun away, but Bridges ran away. Shorter took Parks to the emergency room, where he died a few minutes later. Shorter testified that nobody living at his aunt's house was armed with a deadly weapon on the day Parks was killed.

Bridges's ex-girlfriend, Dasia Garfield, testified that she drove him to the aunt's residence on May 21. He was armed with a gun, told her to stop, and got out of the car. Garfield saw Bridges take some things from one man, turn, and walk underneath a carport. Shots were fired, and someone hit the ground. Bridges and the man he had initially taken items from got into a tussle. Bridges returned to Garfield's car, and they drove away.

A neighbor who lived across the street had security cameras on her front porch and to the side of her house. She turned over her security-system footage to the police, and it was played for the jury.

2

After the State rested its case, Bridges testified in his own defense. He testified that about a week before the shooting, Parks and Shorter bought marijuana from him. According to Bridges, he got home after the sale and discovered that they had given him counterfeit money. Bridges went back to the house to confront Parks and Shorter, and they started hitting him. He was able to get away and claimed that although he was armed that night, he did not brandish his weapon. One week later, Bridges was driving down the street with his girlfriend and passed the house. He recognized Shorter standing outside. Bridges got out of the car, armed with a gun, and he and Shorter began to "negotiate about what [Shorter] owed [Bridges] and what he had on him right then and there." Shorter began giving Bridges his property. Bridges testified that he turned to walk off, but he saw Parks come outside and decided to approach him because he wanted an explanation about the previous week's events. Bridges testified that he did not pull his gun out until he approached Parks, and at that point, Shorter and Riney were positioned behind him. Bridges testified that Parks "swung on [him]," and he thought he "was going to get harmed again or maybe even killed." Bridges admitted that he had shot Parks.

Based on this evidence, a jury convicted Bridges of capital murder, aggravated robbery, theft of property, and a firearm enhancement, and sentenced him to an aggregate term of life imprisonment without parole plus ten years. He filed a timely notice of appeal.

II. *Points on Appeal*

A. Justification

Bridges first argues that the State presented insufficient evidence to sustain his convictions because there was substantial evidence of justification. He claims that he acted

3

"reasonably in self-defense when he became outnumbered and surrounded by foes, one punched him as the other two were behind him, and he reasonably feared for his life."

As an initial matter, we must determine whether this issue is preserved for appeal. Arkansas Rule of Criminal Procedure 33.1 provides that, "[i]n a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor." Ark. R. Crim. P. 33.1(a). A defendant is bound by the scope and nature of his directed-verdict motion at trial and cannot change the grounds on appeal. *White v. State*, 2023 Ark. 90, at 8. Specifically, we have held that an argument that the State failed to negate self-defense was unpreserved when the appellant made only a general motion to the circuit court and did not specify how the State's proof was insufficient to meet its burden. *Kinsey v. State*, 2016 Ark. 393, at 9, 503 S.W.3d 772, 778.

Here, in his directed-verdict motion below, Bridges's trial counsel argued that because the elements of theft and aggravated robbery had not been proved, they "can't be used as a predicate to satisfy the elements for capital murder." He continued that, "with respect to the issue of self-defense I'd like to ask to reserve on that issue until I've had a chance to visit with my client shortly to make sure that it is, in fact, his intention to testify." Bridges decided to testify, but his trial counsel never revisited the issue of justification and did not include a justification argument when he renewed his directed-verdict motion at the close of all the evidence. Accordingly, we hold that Bridges's challenge to the sufficiency of the evidence based on the State's failure to negate his justification defense is unpreserved, and we affirm.

B. Mistrial

4

Bridges next argues that the circuit court abused its discretion by denying his mistrial motion when the State commented on his failure to call his sister to verify his injuries from a prior altercation with Shorter and Parks. The State responds that Bridges's argument is unpreserved because he failed to obtain a ruling on his mistrial motion. We agree that the issue is not preserved.

An appellant must obtain a clear ruling on a motion for mistrial in order to preserve a mistrial argument for appeal. *Rutledge v. State*, 345 Ark. 243, 248, 45 S.W.3d 825, 829 (2001). Here, during Bridges's cross-examination about injuries he allegedly received the week before the murder, the prosecutor asked whether Bridges's sister was present in the courtroom and whether she had seen his injuries. Bridges's trial counsel objected and moved for a mistrial "on the basis that the State has made a spectator, who's an unavailable witness, into a witness. And I don't think it's permissible."

The circuit court ruled as follows:

I will allow you to ask did anyone see you with those injuries. But I don't want to proceed with other evidence regarding who's in the court room and who could have testified and who shouldn't have testified. For one thing, defense doesn't have to call witnesses. It's not their burden to prove this case.

The circuit court did not, however, rule on Bridges's mistrial motion. We therefore hold that his mistrial argument is unpreserved for appeal, and we affirm on this point.

## C. Jury Instruction

For his final point on appeal, Bridges challenges—for two reasons—the justification jury instruction given by the circuit court. First, he contends that it abused its discretion by rejecting his requested justification instruction based on the General Assembly's passage of Act 250 of 2021, which removed the duty to retreat from Arkansas Code Annotated section

5

5-2-607 if six enumerated conditions are satisfied. Second, he argues that it abused its discretion by rejecting his proffered language from AMI Crim. 2d 705 that he was not required to retreat if he is unable to do so with complete safety.

## 1. *Act 250 of 2021*

At the time of the Parks's murder, section 5-2-607 included a duty to retreat. Ark. Code Ann. § 5-2-607(b)(1)(A) (Supp. 2019). But in 2021, the General Assembly amended the statute to remove the general duty to retreat if six conditions are met. *See* Act 250 of 2021, § 2; Ark. Code Ann. § 5-2-607(b) (Supp. 2021). Bridges argues that the jury should have been instructed pursuant to the law in effect at the time of his August 2021 trial rather than in May 2020 when the crimes occurred. The State responds that the argument is unpreserved because Bridges failed to proffer the requested instruction. We agree.

To preserve an objection to an instruction for appeal, the appellant must make a proffer of the proposed instruction to the circuit court. *Harris v. State*, 2023 Ark. 64, at 19, 663 S.W.3d 355, 367. That proffered instruction must then be included in the record to enable the appellate court to consider it. *Id.*, 663 S.W.3d at 367. An instruction that is not contained in the record is not preserved and will not be addressed on appeal. *Id.*, 663 S.W.3d at 367. Although Bridges sought a jury instruction based on the 2021 amendment to section 5-2-607, he failed to proffer an instruction that included the language from that amendment. Thus, we conclude that his argument is unpreserved for appeal.

## 2. *Proffered language from AMI Crim. 2d 705*

Bridges next argues that the circuit court abused its discretion by rejecting his proffered language from the AMI Crim. 2d 705 justification instruction—that a person is not required to retreat if he is unable to retreat with complete safety—because it was a

correct statement of the law at the time of the charged offense. The State responds that the circuit court did not abuse its discretion in rejecting this proffered language because his self-defense claim was not supported by anything other than his self-serving testimony, and that testimony was contradicted by other evidence.

There must be a rational basis in the evidence to warrant the giving of a jury instruction. *Norris v. State*, 2010 Ark. 174, at 8, 368 S.W.3d 52, 56. When the defendant has offered sufficient evidence to raise a question of fact concerning a defense, the instructions must fully and fairly declare the law applicable to that defense; however, there is no error in refusing to give a jury instruction when there is no basis in the evidence to support the giving of the instruction. *Id.* at 8, 368 S.W.3d at 57. This court has affirmed a circuit court's refusal to submit a proffered jury instruction when the only basis for the instruction was the defendant's self-serving statements or testimony, contradicted by other witnesses. *Id.* at 9, 368 S.W.3d at 57. We will not reverse the circuit court's refusal to submit an instruction to the jury absent an abuse of discretion. *Id.* at 7, 368 S.W.3d at 56.

Here, the instruction at issue, AMI Crim. 2d 705, is based on Arkansas Code Annotated section 5-2-607 (Supp. 2019), which provides:

> (a) A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is:
>
> > (1) Committing or about to commit a felony involving force or violence;
> >
> > (2) Using or about to use unlawful deadly physical force; or
> >
> > (3) Imminently endangering the person's life or imminently about to victimize the person as described in § 9-15-103 from the continuation of a pattern of domestic abuse.
>
> (b) A person may not use deadly physical force in self-defense if the person knows that he or she can avoid the necessity of using deadly physical force:

(1)(A) By retreating.

(B) However, a person is not required to retreat if the person is:

  (i)     Unable to retreat with complete safety;

  (ii)    In the person's dwelling or on the curtilage surrounding the person's dwelling and was not the original aggressor; or

  (iii)   A law enforcement officer or a person assisting at the direction of a law enforcement officer; or

(2) With complete safety by surrendering possession of property to a person claiming a lawful right to possession of the property.

Ark. Code Ann. § 5-2-607(a)–(b).

The AMI Crim. 2d 705 instruction, which tracks section 5-2-607, contains the following bracketed language potentially applicable depending on the evidence presented in each case:

[A person is not justified in using deadly physical force if he knows that the use of deadly force can be avoided.

(a) (by retreating.) (However, he is not required to retreat if he is [unable to do so with complete safety] [(in his dwelling) (on the curtilage surrounding his dwelling) and was not the original aggressor] [a law enforcement officer acting in the line of duty] [assisting at the direction of a law enforcement officer].)

(b) (with complete safety by surrendering possession of property to a person who claims a lawful right to it.)]

Here, the jury was instructed on justification and, specifically, as to the duty to retreat, it was instructed that "[a] person is not justified in using deadly physical force if he knows that the use of deadly physical force can be avoided by retreating." We see no abuse of discretion in the circuit court's refusal to include the bracketed language from AMI Crim. 2d 705 that "he is not required to retreat if he is unable to do so with complete safety"

8

because there was no basis in the evidence for that instruction. In fact, Bridges admitted that he had taken a gun with him on the night of Parks's murder and that he had begun to retreat from the scene before he saw Parks come outside. Bridges then turned and walked toward Parks, pulling out his gun as he approached him. Any assertion that Bridges was unable to retreat with complete safety was based on his own self-serving testimony, contradicted by other witnesses. *See Norris*, 2010 Ark. 174, at 9, 368 S.W.3d at 57. Thus, we hold that the circuit court did not abuse its discretion by refusing to include the bracketed language in its justification instruction to the jury, and we affirm on this point.

D. Rule 4–3(a)

Because Bridges received a life sentence, this court, in compliance with Arkansas Supreme Court Rule 4–3(a), has examined the record for all objections, motions, and requests made by either party that were decided adversely to Bridges. No prejudicial error has been found. We therefore affirm.

Affirmed.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.