Cite as 2024 Ark. App. 590

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-24-88

| | | |
|---|---|---|
| | | **Opinion Delivered** December 4, 2024 |
| DAVID SAWYERS | | |
| | APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CR-22-824] |
| V. | | |
| | | HONORABLE KEN CASADY, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

David Sawyers was charged with rape and second-degree sexual assault. Following a jury trial in the Saline County Circuit Court, Sawyers was convicted on both counts and sentenced to thirty years' imprisonment. On appeal, Sawyers argues that the circuit court erred in denying his motions for directed verdict, denying his motion to merge the charges, denying his proffered jury instruction, and denying his motions for a mistrial. We affirm.

The charges arose from allegations that Sawyers molested his thirteen-year-old step-granddaughter while she spent the night with him. The minor victim ("MV") testified at trial describing the event. Other testimony was given by MV's parents and grandmother, a responding officer, and a sexual-assault nurse examiner (SANE nurse).

MV testified that in August 2022, she and her younger sister were spending the night at their grandparents' house, as they often did. On this night, MV went to sleep in the bed with Sawyers while her sister and grandmother slept in the living room. MV testified that she woke up around 3:00 a.m. when Sawyers rolled over and put his arm around her. She said that Sawyers took her hand and made her touch his penis under his shorts. MV testified that Sawyers next rubbed her side and legs before putting his hand under her shirt and touching and squeezing her breasts. She said that Sawyers then put his hand under her shorts and rubbed her vagina on top of her underwear. She said that he rubbed in circles aggressively with two fingers and that it started to sting a little bit. Sawyers then put his hand inside her underwear and rubbed her vagina with two fingers, which she said started to really hurt. When asked by the State to point to a demonstrative aid and tell where his fingers went, MV pointed and affirmed that it was on the "inside of [her] vagina" and "inside of those lips." She said that Sawyers did not stop until she rolled over onto her stomach, and he then started rubbing her back, butt, and legs. She said that Sawyers kept saying "I love you, [MV]," and "I'm glad you're here."

MV testified that she was very confused and scared, and she did not know what to do. She said that she eventually got up the courage to sit up and tell Sawyers that her stomach hurt and she was hungry. MV went to the kitchen and poured a bowl of cereal so Sawyers would hear her and then woke her grandmother up. MV told her grandmother that she was cold and wanted to switch spots with her. MV's grandmother agreed and went into the bedroom leaving MV to sleep in the living room. MV said that she then texted her mother.

2

The text, sent at 3:09 a.m., stated that she wanted to be picked up and did not want to be there anymore. When MV's mother called her a short time later, MV reported that Sawyers had touched her, and her parents rushed over to the house.

MV was interviewed at a child-advocacy center two days later. On cross-examination, Sawyers attempted to impeach her credibility with prior inconsistent statements from the interview transcript. MV testified that Sawyers was awake when he first rolled over and put his arm on her; however, she acknowledged that she had told the interviewer that Sawyers may have been "sleep moving" at some point. Regarding penetration, MV acknowledged that she said in her interview that she did not think Sawyers "went inside" but he probably would have if she had not rolled over. When asked whether she was sure today, MV stated that she was "not sure he put his fingers inside of me." On redirect, MV testified that the transcript did show that she told the interviewer that she "felt the pressure on the inside." MV also testified that she knew Sawyers was awake by the way he was breathing and because she could feel his body propped up on the mattress behind her. In a recorded phone call from jail made to his adult son that was played for the jury, Sawyers stated, "Well, I did, I did wrong. We can talk more about it."

Vickie Hutchison, a pediatric SANE nurse, testified that MV had a normal physical exam, meaning that she did not have lasting damage to her body. Hutchison explained that if a victim is touched with a finger in the labia majora, this constitutes labial penetration, but there is an amount of space between the labia and the hymen. She testified that MV told her that Sawyers's finger went into her labia but not necessarily all the way to her hymen.

Hutchison testified that it is typical for children to not understand the legal definition of penetration and that it is difficult for children to explain "inside." Hutchison said that "if it's just past the lips, then that's inside."

The circuit court denied Sawyers's motions for directed verdict, and Sawyers presented no witnesses. The jury found him guilty on both counts.

I. *Sufficiency of the Evidence*

In reviewing challenges to the sufficiency of the evidence, we determine whether substantial evidence, direct or circumstantial, supports the verdict. *Standridge v. State*, 2023 Ark. App. 141, 662 S.W.3d 255. Substantial evidence is evidence of sufficient certainty to compel a conclusion without resort to suspicion or conjecture. *Id.* On review, we view the evidence in the light most favorable to the State and consider only evidence that supports the verdict. *Id.* Matters such as evaluating a witness's credibility and resolving inconsistencies in the evidence are issues for the jury and not the court. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008).

To convict Sawyers of rape, the State had to prove that he engaged in deviate sexual activity with MV, who was less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2023). "Deviate sexual activity" includes any act of sexual gratification involving the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person. Ark. Code Ann. § 5-14-101(1)(B) (Supp. 2023). A rape victim's testimony may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. *Standridge, supra*. The rape

4

victim's testimony need not be corroborated nor is scientific evidence required, and the victim's testimony describing penetration is enough for a conviction. *Id.*

Sawyers argues that there was insufficient evidence of penetration based on MV's statement to the interviewer that she did not think he "went inside" and her testimony that she was "not sure he put his fingers inside of me." However, on direct examination, the jury was able to view MV point on the demonstrative aid to where Sawyers's fingers went. The State asked if this was the "inside of [her] vagina" and the "inside of those lips right there" and if she was certain, and MV answered affirmatively. The inconsistency brought out on cross-examination regarding whether Sawyers's finger went "inside" of her was addressed by the SANE nurse's testimony regarding the difficulty children have explaining "inside" and her explanation that the definition of penetration includes "just past the lips." She testified that MV told her that Sawyers's fingers went into her labia but not all the way to her hymen. A conviction for rape requires penetration of only the labia majora, however slight. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Ralston v. State*, 2019 Ark. App. 175, 573 S.W.3d 607. We hold that there was sufficient evidence to support the conviction for rape. *See Hartley v. State*, 2022 Ark. 197, 654 S.W.3d 802 (holding that SANE nurse's testimony combined with minor child's description of vibrator's location on her vagina, the fact that it was vibrating, and the pain that resulted gives rise to more than just suspicion and leaves little room for doubt that defendant penetrated the child's labia majora with the object, even if only slightly).

5

Sawyers also challenges his conviction for second-degree sexual assault, arguing that there was no evidence that any acts were done for the purpose of sexual gratification. A person commits second-degree sexual assault if the person, being eighteen years of age or older, engages in sexual contact with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-125(a)(3) (Supp. 2023). "Sexual contact" means an act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101(12)(A). The supreme court has held that the State is not required to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act. *Rounsaville v. State*, 374 Ark. 356, 288 S.W.3d 213 (2008). MV testified that Sawyers made her touch his penis before he rubbed her breasts, buttocks, and vagina and told her that he loved her. This evidence is sufficient to prove sexual gratification and support the conviction. *See McCree v. State*, 2021 Ark. App. 205, 624 S.W.3d 114 (holding that jury was allowed to assume that defendant touched eleven-year-old's breasts for sexual gratification).

## II. *Merger*

When making his directed-verdict motion at the close of the State's case, Sawyers argued that the sexual-assault charge should be merged into the rape charge if there is a conviction on the rape charge. He claimed that this was because sexual assault is a lesser-included offense of rape. The circuit court denied the motion. On appeal, Sawyers argues that the court erred in denying his motion for merger because the sexual-assault charge was

a lesser-included offense of the rape charge and because the alleged offenses were a continuing course of conduct.

An argument that the circuit court erred in failing to merge the offenses is rooted in the constitutional prohibition against double jeopardy. *See Bunch v. State*, 94 Ark. App. 247, 228 S.W.3d 534 (2006). A defendant cannot object to a double-jeopardy violation based on overlapping charges in the same prosecution until he has actually been convicted of multiple offenses, and if he fails to object after being convicted, his double-jeopardy argument is waived. *Taylor v. State*, 2019 Ark. App. 348, 582 S.W.3d 870. Here, Sawyers's motion for merger was made before he was convicted of any offense and was not renewed following his convictions. Furthermore, he did not raise the continuing-course-of-conduct argument below; accordingly, all his arguments were waived for purposes of appeal.

### III. *Jury Instruction*

The circuit court denied Sawyers's request to include a non-AMI jury instruction, reciting Arkansas Code Annotated section 5-2-204(a) (Supp. 2023). The proffered instruction stated as follows: "A person does not commit an offense unless his or her liability is based on conduct that includes a voluntary act or the omission to perform an act that he or she is physically capable of performing." The court found that the facts did not support giving the instruction. Sawyers argues that the court erred in denying the instruction because there was testimony presented that he could have been sleeping during the offenses.

There must be a rational basis in the evidence to warrant the giving of a jury instruction. *Bridges v. State*, 2023 Ark. 157, 676 S.W.3d 275. When the defendant has

offered sufficient evidence to raise a question of fact concerning a defense, the instructions must fully and fairly declare the law applicable to that defense; however, there is no error in refusing to give a jury instruction when there is no basis in the evidence to support the giving of the instruction. *Id.* The supreme court has affirmed a circuit court's refusal to submit a proffered jury instruction when the only basis for the instruction was the defendant's self-serving statements or testimony, contradicted by other witnesses. *Id.* We will not reverse the circuit court's refusal to submit an instruction to the jury absent an abuse of discretion. *Id.*

Here, although she acknowledged using the term "sleep moving" in her interview, MV testified that she was sure Sawyers was awake during the offenses, and she specifically described separate actions he took and things he said to her. The only other evidence that Sawyers could have been asleep came from statements that Sawyers made to other witnesses that he may have had a sexual dream and that he did not remember doing what he was accused of. Accordingly, any assertion that Sawyers was asleep and did not commit a voluntary act was based on his own self-serving statements and was contradicted by MV's testimony. As such, the circuit court did not abuse its discretion by refusing the proffered jury instruction.

IV. *Motions for Mistrials*

During the State's closing argument, the prosecutor discussed the lack of DNA evidence in this case. MV was interviewed at the child-advocacy center and underwent a medical forensic exam, but her mother declined to have a rape kit performed. MV's mother testified that she made this decision because she knew from what MV had told her that there

8

would be no semen, and she did not think it would be worth the extra trauma of a "very invasive" rape kit. The SANE nurse testified that had MV and her mother consented to the rape kit, she would have swabbed MV's vagina and rectum. However, the nurse testified that because the rape kit was offered a couple of days after the offenses, she would not have expected there to be any DNA findings. In closing argument, the prosecutor stated as follows:

> Her mom chose for her not to get that in this particular case. I have an 11-year-old daughter. As Shea, the prosecutor, I want everything always done. I want everything tested. As Shea, the mom, I've told my co-workers, I wouldn't put my daughter through it. I've told them before this trial --

Sawyers objected and asked for a mistrial, arguing that the State was improperly vouching for MV's mother. The court denied the mistrial, and Sawyers requested a curative instruction that the jury is not to consider any statements of vouching. The court ruled that it would give a curative instruction at the end of arguments that "it's just an argument and not evidence." Following all closing arguments, the court instructed the jury that "the comments of both attorneys in closing arguments are, in fact, just argument. The facts of the case and the credibility of the witnesses are yours to determine."

The decision to grant or deny a motion for mistrial is within the sound discretion of the circuit court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). A mistrial is a drastic remedy and should be declared only when there is error so prejudicial that justice cannot be served by continuing the trial, and when it cannot be cured by an instruction to the jury. *Id.*

9

On appeal, Sawyers argues that in a case based on witness credibility with no physical evidence, the State's improper vouching was especially prejudicial. Although it is not good practice for counsel to inject their personal beliefs into the closing arguments, mere expressions of opinion by counsel in closing argument are not reversible error so long as they do not purposely arouse passion and prejudice. *Reynolds v. State*, 2016 Ark. 214, 492 S.W.3d 491. Here, the prosecutor's argument that she agreed with the decision made by MV's mother did not appear to be made with the purpose of arousing any passion or prejudice of the jury. The soundness of the mother's decision was not critical to Sawyers's defense, especially considering the testimony that no DNA was expected to be found had the rape kit been performed. Furthermore, although the circuit court did not directly address vouching, it did instruct the jury that the credibility of the witnesses was a matter for the jury to decide. Under these circumstances, we hold that the circuit court did not abuse its discretion in finding that the prosecutor's argument was not so prejudicial as to require a mistrial.

Sawyers again requested a mistrial based on the court's response to his request to approach near the end of the State's closing argument. When Sawyers's counsel asked, "[M]ay we approach?" the court responded, "No. Sit down." In moving for a mistrial, Sawyers's counsel argued that the court's firm reaction to his request to approach prejudiced both himself and Sawyers in the eyes of the jury.[1] The court denied the motion for mistrial but instructed the jury that

---

[1]Sawyers's counsel acknowledged that there was no basis for the objection he intended to make because the prosecutor did not say what he thought she was going to say.

as I had reminded you two times, closing arguments are, in fact, as I said, arguments. Sometimes there are objections during closing arguments. You heard me rule ̃ and I thought about it when I did it. You heard me rule on an objection, and though I believe I ruled correctly on the objection, I might have shown some frustration in the process. I want you to not hold the frustration I showed against [defense counsel] or any other counsel. I was only frustrat[ed] in tone, and when I did it, I regretted it. It was only a tone and a moment that I wanted to call to your attention. Do not hold that against other counsel. [Defense counsel] ̃ hold it against me, the frustration and the tone that I used. However, that should not reflect on any evidence or, really, anything that was said in closing arguments. Do you understand that?

On appeal, Sawyers argues that the judge's frustration toward counsel prejudiced him, and an admonition was not sufficient to remove the prejudice. In examining remarks made by the circuit court to counsel, the supreme court has distinguished unmerited rebukes that give the jury the impression that counsel is being ridiculed from a showing of irritation at defense counsel's trial tactics. *See McDaniel v. State*, 283 Ark. 352, 676 S.W.2d 732 (1984). In *Blanks v. State*, 2018 Ark. App. 495, 562 S.W.3d 865, we affirmed the denial of a mistrial when the circuit court twice told defense counsel that it would have the bailiff help counsel sit down. The *Blanks* court held that it was clear from the record that the court believed counsel was being argumentative with the court's rulings, but the court's frustrated comments were not a reflection on counsel's knowledge and skill as a lawyer. Here, the court's remarks did not rise to the level of those in *Blanks*, and the court admonished the jury not to hold its frustrated tone against Sawyers or his counsel. We hold that the circuit court did not abuse its discretion in denying the motion for mistrial.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

11

*Digby Law Firm*, by: *Bobby R. Digby II* and *Mathew R. Ingle*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.