Cite as 2024 Ark. 163

# SUPREME COURT OF ARKANSAS
**No.** CR–24–45

| | |
|---|---|
| | **Opinion Delivered:** October 31, 2024 |
| JEFFERY MCPHERSON | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR–22–49] |
| APPELLANT | |
| V. | HONORABLE BRENT HALTOM, JUDGE |
| STATE OF ARKANSAS | |
| | AFFIRMED. |
| APPELLEE | |

**BARBARA W. WEBB, Justice**

A Miller County jury convicted Jeffery McPherson of first-degree murder and tampering with physical evidence. He received consecutive sentences of life and twelve years in prison plus a $12,000 fine, respectively. On appeal, McPherson argues that the evidence was legally insufficient to sustain both convictions and, alternatively, that the convictions should be reduced to lesser charges. We affirm.

## I. *Standard of Review*

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and consider only evidence that supports the verdict. *Wallace v. State*, 2023 Ark. 7, 659 S.W.3d 267. We will affirm a conviction if substantial evidence exists to support it. *Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701. Substantial evidence is that which is of sufficient force and character that it will, with reasonable

certainty, compel a conclusion without resorting to speculation or conjecture. *Id.* We do not weigh the evidence presented at trial or assess the credibility of the witnesses because those are matters for the fact-finder. *Halliburton v. State*, 2020 Ark. 101, 594 S.W.3d 856. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* Further, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Rule 33.1 of the Arkansas Rules of Criminal Procedure requires that, to preserve a challenge to the sufficiency of the evidence in a jury trial, a criminal defendant must move for directed verdict at the close of the evidence in the State's case-in-chief and at the close of all the evidence. An appellant is bound by the nature and scope of the directed-verdict motion he made at trial. *Bridges v. State*, 2023 Ark. 157, 676 S.W.3d 275.

## II. *Background.*

McPherson was charged as a habitual offender with first-degree murder of his fiancée's two-month-old son, Minor Child ("MC"). The tampering charge, a violation of Arkansas Code Annotated section 5-53-111, arose from allegations that McPherson deleted images captured by an internal surveillance camera that was operating inside McPherson's residence.

The victim, who died on May 25, 2022, was the two-month-old son of Britney Hollowell, McPherson's live-in girlfriend. McPherson is not the child's biological father. In addition to Hollowell, McPherson shared his residence with his four-year-old daughter and Jason Uncel. On April 13, 2022, Hollowell left MC in McPherson's care so she could report

to her probation officer. However, she never returned to care for MC because she was arrested for a probation violation and remained incarcerated until after MC's death. In the interim, McPherson was MC's primary caregiver.

MC suffered from intestinal maladies. McPherson told the lead investigator, Detective Douglas Pearson, that he was often sleep deprived and stressed because MC seemed to constantly be in pain, which caused him to cry an "ungodly amount." McPherson stated that he alleviated MC's intestinal issues by moving the child's legs in a circular motion, as if he was riding a bicycle.

In his trial testimony, Jason Uncel confirmed that MC had intestinal issues. He both observed and personally used the bicycle technique to address the child's discomfort. He also noted that the child's crying made McPherson "a little sad" and "kind of crazy." Uncel further stated that McPherson was MC's primary caregiver although he sometimes helped out with MC. According to Uncel, neither he nor McPherson had jobs, and he was currently incarcerated in a residential treatment center, having had his parole revoked due to methamphetamine charges filed against him.

Around ten o'clock on the evening before MC's death, Hollowell called McPherson from the detention center and could hear MC crying in the background. The intensity of his cry that night alarmed her. MC was clearly in pain and crying so hard that he was grasping for breath. Before the call was disconnected, Hollowell begged McPherson to take MC to the hospital.

McPherson told police that on the day of MC's death, he attempted to alleviate the child's pain by helping him to evacuate his bowels. McPherson stated that he picked up the

child and patted the baby's buttocks. He then laid MC on the living room sofa and performed the bicycle procedure until the child either defecated or passed gas and stopped crying. McPherson claimed that he was experiencing his own intestinal issues and spent approximately the next thirty minutes in the bathroom. When he returned to check on the child, MC had stopped breathing.

Forensic medical examination of MC revealed that the child suffered from seven healing and fourteen "acute" fractured ribs inflicted near the time of death. MC also had a fresh fracture on his left femur in the metaphyseal region of his left leg. Chief Medical Examiner Dr. Theodore Brown testified that the forensic pathology literature correlated this type of fracture to trauma inflicted on infants. He clarified that the injury was the type that resulted from "dramatic action that was not accidental." The medical literature further noted that it is typically caused by "a pulling or a twisting or even a shaking." In sum, Dr. Brown opined that the healing rib fractures were sustained days to weeks before MC's demise. He stated that the cause of death for MC was blunt-force trauma to the child's chest, which interfered with MC's ability to breathe.

McPherson's home had an internal Ring security camera. According to McPherson, it could be controlled with applications on the mobile phones owned by Hollowell, himself, and Uncel, as well as a tablet that was at the residence. During his interview with police, detectives discovered that the phone that McPherson had been using had been wiped clean and reset to factory settings. Nonetheless, McPherson was able to access the systems video recordings by logging onto a computer with a user name and password. McPherson scrolled through numerous short video clips to a recording that showed him scooping MC's lifeless

body from a living room sofa grabbing his car keys and dashing out the door to take the child to the hospital. At the request of the detectives, McPherson surrendered the phone and signed a waiver authorizing police to search the device. According to Detective Pearson, the process of downloading video from the Ring cloud was proving to be difficult and time-consuming so he turned his attention to completing the interview with McPherson followed by conducting an interview with Uncel. After McPherson left, Detective Pearson returned to the task of downloading the video. However, he discovered that it had been erased. In a recorded phone call from Hollowell, who was incarcerated at the bi-state detention center, McPherson admitted that he had deleted the surveillance video because there was "[stuff] on there that [the police] didn't need to see."

### III. *Argument Challenging the First-Degree Murder Conviction*

The relevant first-degree murder formulation under which McPherson was charged and convicted is that he knowingly caused the death of a person under the age of fourteen. Ark. Code Ann. § 5-10-102(a)(3) (Supp. 2023) (effective until Jan. 1, 2024). In his directed-verdict motion, McPherson challenged only the mens rea, asserting that the State failed to prove that he knowingly caused the death of MC. He asserted that "at worst, this was maybe a reckless case." Additionally, McPherson argued that the State "disregarded another obvious suspect," referring to Uncel.

On appeal, McPherson argues that the evidence of what happened was "unclear." He focuses on his self-serving description of what happened—performing the bicycle technique to relieve MC's intestinal distress. He also attempts to discredit Uncel's testimony. McPherson concludes by citing the testimony of witnesses who opined that he was doing a "good job"

caring for MC. This argument comports with neither our preservation jurisprudence nor our standard of review.

As the State argued at trial, its theory of the case was not that McPherson's admitted conduct caused MC's death. Instead, the State contended that the cause of MC's death was the conduct that he did not admit to, but was proven circumstantially by the forensic medical evidence. A defendant's intent is ordinarily inferred from the facts and circumstances of the crime, as it can rarely be proved by direct evidence. *Terrell v. State*, 342 Ark. 208, 210, 27 S.W.3d 423, 425 (2000). Furthermore, a jury can consider evidence of a defendant's attempts to cover up evidence as proof of the requisite intent. *Id.* We hold that there was substantial evidence presented to support the jury's verdict. Accordingly, it is unnecessary for us to consider the balance of McPherson's argument in which he advocates for reducing his first-degree murder conviction to a lesser charge.

IV. *Argument Challenging the Felony Tampering-With-Evidence Conviction*

A person commits tampering with physical evidence if he alters, destroys, suppresses, removes, or conceals any record, document, or thing with the purpose of impairing its verity, legibility, or availability in an official proceeding or investigation. Ark. Code Ann. § 5-53-111(a) (Repl. 2016). Tampering with physical evidence is a Class D felony if the person impairs or obstructs the prosecution or defense of a felony. Ark. Code Ann. § 5-53-111(b)(1). Otherwise, it is a Class B misdemeanor. Ark. Code Ann. § 5-53-111(b)(2).

During the search of McPherson's home, the officers found a camera mounted to the living room ceiling. A blue light on the camera indicated that it was functioning properly. McPherson confirmed that the camera was working and told Detective Pearson that the

video recordings were uploaded to a Ring storage cloud. During his police interview, McPherson seemed to be completely cooperative, signing a consent form authorizing the search of the phones and showing detectives the Ring video recordings. Although he made police aware of the existence of video that could show the events prior, McPherson focused on the above-described video that showed his concern for MC after he discovered that the child had stopped breathing.

As noted previously, when police attempted to download the video segments that McPherson had scrolled through, they received error messages stating that the recordings had been deleted. In a later phone conversation with Hollowell, McPherson admitted deleting the video recordings.

In his directed-verdict motion, McPherson essentially conceded – he called it a "semi acknowledgement" – that he had erased the video files. This admission was made in two recorded phone calls from Hollowell. However, McPherson suggested in his directed-verdict motion, that he was erasing only the files that related to "something else."

On appeal, McPherson argues that the State failed to prove that the videos existed, that he was the person who deleted them, the point at which the videos were deleted, and that the videos, if they did exist, hindered the prosecution or defense of a felony. We disagree.

While we acknowledge that there is a problem inherent in having to prove the substance of something that no longer exists, there was ample direct and circumstantial evidence of what the videos would show. McPherson preserved for the police the video that he wanted them to see – showing his surprise that MC had expired and obvious concern for MC as he rushed to take the child to the hospital. That video, while not showing the events

prior to MC's death, demonstrated that the recording was working, and would likely have captured the conduct that resulted in multiple fractured ribs and fractures on MC's left femur.

Regarding the identity of the person who deleted the video, that issue is resolved by direct evidence: McPherson admitted it to Hollowell. Hollowell, who was familiar with what the surveillance camera covered, was incredulous that he had deleted the video because she believed it would show that he was innocent. It was within the province of the jury to conclude the opposite. A jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct. *Terrell v. State*, *supra*.

Finally, we note that McPherson urges us to find *Scott v. State*, 1 Ark. App. 207, 614 S.W.2d 239 (1981), analogous to the case at bar and reduce his conviction to misdemeanor tampering with physical evidence. We believe that McPherson's reliance on *Scott* is misplaced. In *Scott*, the court held that the evidence that appellant tossed the firearm after the shooting and refused to assist the police officers in locating the weapon was sufficient to support his conviction for tampering with physical evidence. *Id*. at 210, 614 S.W.2d at 241. *Scott* is readily distinguishable from the case before us. In *Scott*, no felony charges related to the shooting were ever filed, and the record on appeal did not show that appellant's removal of the firearm impaired or obstructed the filing of felony charges. *Id*. at 208–10, 614 S.W.2d at 241–42. Here, felony charges were filed, and the case was pursued to verdict. Accordingly, we affirm on this point as well.

V. *Rule 4-3(a) Review*

Because McPherson received a sentence of life imprisonment, the record has been reviewed for all errors prejudicial to him, as required by Arkansas Supreme Court Rule 4–3(a). No reversible error was found.

Affirmed.

BAKER, J., concurs.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.