Cite as 2024 Ark. App. 614

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-24-26

|  |  |
|---|---|
| | Opinion Delivered December 11, 2024 |
| JOSEPH RODRIGUEZ-BERDECIA<br>APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CR-21-726] |
| V. | |
| | HONORABLE MARK LINDSAY, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

**CINDY GRACE THYER, Judge**

Joseph Rodriguez-Berdecia was convicted by a Washington County jury of three counts of rape; one count of first-degree sexual assault; one count of second-degree sexual assault; and one count of first-degree domestic battering and was sentenced to a combined total of eighty years[1] in the Arkansas Division of Correction. On appeal, he argues that (1) there was insufficient evidence to support his convictions and (2) that the State impermissibly attempted to shift the burden of proof during closing arguments. We affirm.

---

[1]Appellant received forty years on each of the three rape counts, with two of the sentences to run consecutively. The forty-year sentence on the third rape count and the sentences on the other three convictions (twenty years, fifteen years, and one year, respectively) were ordered to run concurrently to the consecutive sentences on the first two rape counts.

In February 2021, the minor victim (MV) reported to her mother that her mother's former boyfriend (appellant Rodriguez-Berdecia) had sexually assaulted her several years prior. Following this revelation, MV's mother took her to the Springdale police station to report the assault.

After an investigation into the matter, appellant was ultimately charged with two counts of rape of a minor under the age of fourteen; one count of rape of a minor by a guardian; one count of first-degree sexual assault involving a minor and a person in a position of trust or authority; one count of second-degree sexual assault involving a minor under the age of fourteen; and one count of third-degree domestic battering for causing physical injury to a household member with a knife.

A three-day jury trial was held in August 2023. The State called six witnesses: Springdale Police Sergeant Robert Hammontree; Dale Chiddester, a civilian investigator with the Arkansas State Crimes Against Children Division (CACD); Barbara Ervin, a sexual assault nurse examiner (SANE); Karen Blackstone, a forensic interviewer at the Children's Safety Center (CSC); MV; and MV's mother, Nancy Aguirre.

Sergeant Hammontree testified that he was assigned to investigate MV's sexual-assault allegations against appellant, which reportedly occurred when MV was thirteen years old. He stated that, although there had been an approximately four-year delay in disclosing the assault, delayed disclosure was not unusual in those types of cases.

As part of his investigation, Hammontree arranged for forensic interviews of MV and her siblings at the CSC.[2] MV's interview at the CSC, which he observed, occurred on February 24, 2021. He also discussed the allegations with appellant, who denied them. After questioning appellant, Sergeant Hammontree arrested him.

On cross-examination, Sergeant Hammontree admitted he had not obtained a search warrant for the residence where the crimes allegedly occurred,[3] nor did he attempt to collect any additional physical evidence due to the delay in reporting. He also testified that, although he was aware that MV had been to Vantage Point for mental-health issues, he had not made any attempts to obtain her medical records. He further denied knowing that MV had accused someone else.

Dale Chiddester explained forensic-interviewing techniques and the various reasons why child victims might delay reporting abuse. He then testified that he had conducted MV's February 24 interview regarding her allegations against appellant. He stated that he had not seen any of the signs indicative of lying during that interview. After the interview, he requested that MV undergo a forensic medical examination because she had disclosed penetration and that one of the incidents reportedly resulted in a scar. He stated that he also

---

[2]He did not set up a medical exam because of the delayed disclosure. The siblings' interviews did not produce any additional evidence.

[3]At the time of the investigation, the parties no longer lived at that residence.

observed the interviews of MV's siblings, but none of them reported any sexual abuse.[4] At the conclusion of his investigation, he issued a true finding as to MV's allegations.

Barbara Ervin testified that she performed a forensic medical examination on MV on March 4, 2021. The exam was normal. Ervin testified, however, that it is very common to have normal exams after an alleged assault, and in fact, over 90 percent of the exams in these situations—even exams of pregnant teenagers—are normal. She further testified that, given the delayed disclosure and the four years that had elapsed since MV's last physical contact with appellant, any injury sustained would have healed by the time the exam was performed. She did report finding a one-inch scar on MV's lower left buttock and inner thigh, which MV claimed to have received during one of the assaults. A photograph of the scar was admitted and shown to the jury.

Karen Blackstone described the multiple reasons a child might delay disclosure of abuse. She admitted on cross-examination, however, that she had no way of telling whether any particular child was telling the truth about alleged abuse.

MV was the next to testify. She testified that appellant had raped her on multiple occasions. She testified that when these incidents allegedly occurred, she was twelve or thirteen years old, and appellant was living with her, her sisters, and her mother in a house in Springdale.[5]

---

[4]One of the children did disclose domestic violence between appellant and Nancy but nothing sexual between the appellant and the other children.
[5]She testified she was approximately fourteen and entering the eighth grade when her mother left appellant, and they moved out of the home.

MV claimed that the first incident occurred when she was cleaning her bedroom. She and appellant were alone in the house at the time. Appellant entered the room; accused her of watching pornography on her phone; grabbed her breast; and told her that he knew she liked it. When she responded that she did not like it, he told her not to tell her mother.

According to her testimony, a few nights later, appellant entered her room while she was in bed. He crawled on top of her, grabbed her arms, and pinned her down with his knees. He then pulled down her pants and underwear and penetrated her vagina with his penis. She told him to stop and that it hurt, and she tried to push him off. He refused and ordered her to be quiet. He did not wear a condom during the assault, and MV believed he pulled out before he ejaculated. She said he left marks on her hands and that she wore hoodies at his suggestion to hide the bruising. He warned her not to tell anyone or he would rape her sisters, too, so she remained silent. He also told her that her mother would not believe her.

On another occasion that summer, appellant entered the bathroom while MV was showering and touched her naked breast. Although she was crying, he told her that he knew she liked it.

The next assault occurred while MV was in a bedroom she shared with one of her sisters. She was alone in the room at the time. Appellant came in, pushed her onto her stomach onto the bottom bunk of the bunkbed, pinned her down, and cut a hole in her

leggings with a pocketknife. When he did so, he accidentally cut her on her left side between her "butt cheeks." He then penetrated her both vaginally and anally. Afterward, he told her to throw her clothes away in a dumpster outside and to wear pads to cover the bleeding from where he had cut her. He again told her that if she told anyone, the same thing would happen to her sisters and that her mother would not believe her and would always choose him over her. The cut ultimately resulted in a scar, and a picture of the scar was introduced into evidence.

MV also described other instances of abuse at the hands of appellant. One such assault occurred in her mother's bedroom as she was changing her youngest sister's diaper. She claimed that appellant pushed her onto the bed, pinned her down, and raped her vaginally and anally. She stated that this incident was rougher than the others and that she remembered that her head hit the wall multiple times as they moved back and forth. Her sister was in the crib during this assault. She described another time when he digitally penetrated her while she was in the kitchen of their home. She further claimed that, when he would try to rape her, he would sometimes place his penis inside her mouth and order her to suck on it so he would get hard. One of those times, he ejaculated in her mouth, and she had to spit it out in the toilet.

MV testified that she was scared of appellant and became suicidal, resulting in a stay at Vantage Point, a mental-health facility.

MV's mother, Nancy, testified that she has three daughters including MV, who is the oldest. The appellant is the father of her youngest daughter, MC.[6] They were never married, but they lived together approximately seven years, from 2010 to 2017. When she was working, the girls would be at home either alone or with appellant. She stated that, while he was verbally and physically abusive to her, she never suspected that appellant was abusing any of her daughters. She never saw any bruising or red marks on MV's hands or face; never heard MV scream in pain; and never saw appellant touch MV inappropriately.

On September 10, 2017, Nancy left appellant over his abuse of her. After that, she had no communication with appellant; all communication regarding MC was through appellant's wife,[7] Lidia Vargas. While appellant had some visitation with MC, Nancy did not facilitate the drop offs because appellant had attacked her on one occasion. However, she would sometimes send MV to drop off MC at appellant's home.

When asked about her relationship with MV, Nancy said that when MV was around twelve or thirteen, MV withdrew from her, and she did not know why. Once, when she was upset, MV told Nancy she did not want to be like Nancy and wanted to go live with her father. Nancy called the police, and MV was admitted to Vantage Point for a week for mental-

---

[6]Nancy testified that MC wore diapers until she was almost three years old and then would use them only at night, which corroborated MV's testimony. MC would have been three and a half in the summer of 2016 when the abuse allegedly occurred. Nancy also described the layout of the house, including the bedrooms, kitchen, and living room.

[7]While Lidia was described by witnesses as appellant's wife, appellant clarified in his testimony that he was not actually married to Lidia, but they were engaged and contemplating marriage.

health treatment. Then, in February 2021, while she and MV were having breakfast at Cracker Barrel, MV disclosed to her that appellant had sexually abused her. Following the disclosure, she immediately took MV to the police to make a report.

After Nancy's testimony, the State rested, and appellant moved for a directed verdict:

On each charge of rape, Your Honor, we would just, of course, allege that the State has not made the prima facie case based on not alleging or not showing sexual intercourse with the accuser. Age has not been established, of course, due to the vagueness of the specific testimony of the alleged accuser in this case and we would renew that motion for both of the other counts of rape as well.

On the charge of sexual assault in the first degree, we allege there has not been a prima facie case made as to again, age for the same reasons as in the charge of rape. They have not shown a prima facie case of deviate sexual activity, or established whether or not the accuser was a spouse in this case, or established a position of authority.

On the charge of sexual assault in the second degree, we would renew the very same, obviously, reasons for sexual assault in the first degree.

Also, finally on the charge of domestic battery in the third degree, we allege at this time that the State did not make a prima facie case in that it has not shown any reckless physical injury caused.

So, we would ask for a directed verdict on all counts.

The court denied the motions.

Thereafter, appellant testified on his own behalf. The defense also re-called Investigator Chiddester and called three other witnesses: Springdale Police Corporal Rusty Boyd; Lidia Vargas; and Dr. Marc Serota, a board-certified physician in pediatrics, immunology, and dermatology.

Corporal Boyd testified that he was working at the Springdale Police Department on February 22, 2021, when Nancy and MV came in to report the sexual assault. MV reported to him that appellant had raped her. The conversation lasted approximately thirty minutes to an hour. During that time, MV did not mention that appellant had cut her with a knife or that it had left a scar on her body. She also did not disclose to him that appellant had touched her vagina while they were in the kitchen of their home or that he had slapped her face or hit her.

On cross-examination, Corporal Boyd noted that his only role was to take the initial report to pass on to the detectives, not to collect evidence or conduct a forensic interview of the victim. He stated that his report did not go into great detail, but he did try to include all the important facts that MV relayed to him concerning the allegations against appellant.

On re-call, Investigator Chiddester testified regarding his forensic interview of MV, and the video of his interview with MV was played to the jury.

In the video, MV, who was seventeen at the time of the interview, recounted the incidents in which appellant assaulted her. She stated that the incidents occurred when she was thirteen years old and living with appellant, her mother, and her sisters. She recounted several instances of abuse: the incident in which he accused her of watching pornography; the incident in the shower; and the incident when he raped her in her room, which she stated happened the same night as the shower incident. She then recounted the rape in the bedroom she shared with her sister, which she said occurred a week following the shower incident. She also described the incident in the kitchen in which he digitally penetrated her.

9

Finally, she described the incident in her mother's bedroom where she said he raped her after she had changed her sister's diaper. She testified that this happened approximately one month later. She stated that the abuse took place for approximately one year.

Lidia Vargas testified that she began dating appellant in December 2017 and that they have two children together. She testified that between 2019 and 2021, both Nancy and MV would bring MC to their home for visitation and leave her at the front of the house. She stated that on one occasion, MV even came into the home to pick up some Christmas decorations.

Dr. Mark Serota testified that he could not to a reasonable degree of medical certainty opine that MV's scar was caused by a knife, either by stabbing or by incision. Instead, he stated that, more likely than not, the scar was not from a knife wound. He noted that the scar was a straight, linear scar unlikely to be sustained when someone is kicking and moving as described by MV. Rather, from MV's description of events, he would have expected the injury to have been jagged or curved. He also stated that this injury would have caused significant bleeding and possibly would have required suturing. He testified that it would have taken weeks to heal, caused significant pain, and superficial first-aid type measures would not have stopped the bleeding.

On cross-examination, Dr. Serota explained that he had been paid $6,000 for his testimony. He acknowledged that it was possible that MV never sought treatment for the cut that caused the scar, and it was possible the cut had occurred four years before the photos were taken. He also stated that it was "possible" that the scar was caused by a knife. He then

10

read from his report in which he said, "I cannot state to a reasonable medical certainty the cause of this scar."

Appellant was the last witness. He denied the accusations against him. He stated that he met Nancy at a casino in 2010 and that they began dating in 2011 or 2012. They began living together sometime in 2012, a few months before they discovered that Nancy was pregnant with MC. They lived together until Nancy moved out sometime in the middle of 2017. He stated that Nancy did not work during the summer of 2016 when the events allegedly occurred because her mother was visiting from Mexico. He also stated that a friend, José Ayalas, also lived with them during that time. He claimed that MV was caught sneaking out of the house with a neighbor boy and girl to drink and smoke marijuana that summer. As a result, they installed security cameras, which Nancy would monitor frequently. He also claimed that MV and Nancy were having issues at that time because MV did not understand why Nancy was not with MV's father and why she could not live with him. At one point, MV threatened to kill herself and, as a result, was admitted to Vantage Point.

Appellant testified that he spoke with the police after MV accused him of sexual assault. He denied all involvement and expressed his innocence during the interview. After the interview, they arrested him.

At the close of all the evidence, defense counsel renewed his motions for directed verdict, and the court once again denied them. The jury found appellant guilty on all charges, and appellant filed a timely notice of appeal from his convictions.

I. *Arguments on Appeal*

11

On appeal, appellant argues that the circuit court erred in denying his motions for a directed verdict and claims that the State impermissibly attempted to shift the burden of proof during closing arguments. We affirm.

## A. Directed Verdict

Appellant first challenges the circuit court's denial of his directed-verdict motions. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Dixon v. State*, 2011 Ark. 450, 385 S.W.3d 164. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and consider only evidence that supports the verdict. *Wallace v. State*, 2023 Ark. 7, 659 S.W.3d 267. We will affirm a conviction if substantial evidence exists to support it. *Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.* We do not weigh the evidence presented at trial or assess the credibility of the witnesses because those are matters for the fact-finder. *Halliburton v. State*, 2020 Ark. 101, 594 S.W.3d 856. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* Further, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Moreover, we will not address arguments concerning the sufficiency of the evidence to support a conviction if the defendant did not move for a directed verdict on that charge. *Railey v. State*, 2023 Ark. App. 433, 675 S.W.3d 912. Finally, a party cannot change the

grounds for an objection or motion on appeal but is bound by the scope of argument made at trial. *Id.*

## 1. *Material variance*

Appellant first argues that the State failed in its burden of proving when the alleged crimes occurred, thereby creating a material variance from the time frame alleged in the information and hindering his ability to present a defense. More specifically, he argues that the first two rapes were alleged to have occurred between June 1 and August 30, 2016; the third rape allegedly occurred between October 31, 2016, and October 31, 2017; the first sexual assault allegedly occurred between June 1 and September 30, 2016; and the final two crimes (sexual assault and domestic battering) allegedly occurred between June 1 and August 30, 2016, and that the State failed to sufficiently prove when these alleged incidents actually occurred. In support of his argument, he claims that the State's evidence was based on MV's "solicited ramblings" without any specific timeline other than it might have been summertime when she was twelve or thirteen. This, he posits, was insufficient. Citing *Johnson v. State*, 55 Ark. App. 117, 932 S.W.2d 347 (1996), he asserts that when the variance between the wording of the indictment or information and the proof at trial prejudices the substantial rights of the defendant, reversal is required.

Appellant, however, never made this argument below. An appellant is bound by the nature and scope of the directed-verdict motion he made at trial. *Bridges v. State*, 2023 Ark. 157, 676 S.W.3d 275; *McPherson v. State*, 2024 Ark. 163, 699 S.W.3d 79. Because appellant

13

did not present this argument below, it is not preserved for our review. *Rogers v. State*, 2024 Ark. App. 340, 690 S.W.3d 465. Thus, we affirm on this point.

2. *Age*

Appellant next argues that the State failed to prove MV's age at the time of the alleged acts.[8] He notes that, although MV testified that she was twelve or thirteen when the crimes allegedly occurred, she could not remember exactly how old she was. He asserts that such equivocal testimony required the jury to resort to speculation and conjecture to determine her age at the time of the alleged events.

It is well established that the uncorroborated testimony of a rape victim alone is sufficient to sustain a conviction. *See, e.g.*, *Ward v. State*, 370 Ark. 398, 260 S.W.3d 292 (2007). Here, the jury was presented with evidence that when MV was twelve or thirteen, appellant fondled her in the shower and then later that same evening engaged in sexual intercourse with her. MV stated that approximately one week later, he again engaged in sexual intercourse with her, cutting her with a knife in the process. This evidence alone is sufficient to prove that she was a minor under the age of fourteen when those acts occurred, thereby supporting the first two rape convictions and the second-degree sexual-assault conviction. And while MV did not specifically testify to her age when the other acts occurred (digital penetration of her vagina while she was in the kitchen of their home and sexual

---

[8]This argument applies only to two of the rape convictions and one of the sexual-assault convictions because the third rape conviction and the first-degree sexual-assault convictions required only a finding that MV was a minor. The domestic-battering charge did not have an age component.

intercourse in the bedroom she shared with her sister approximately one month later), she did testify that they were living with appellant when those acts occurred and that they had moved from the home in September 2017. MV was born in April 2003, making her fourteen years old at the time of the move. She was therefore a minor for purposes of the third rape and the first-degree sexual-assault convictions.[9] Any argument that MV's testimony was vague or indefinite goes to the weight and credibility of her testimony. It is the function of the jury, and not this court on appeal, to evaluate the credibility of witnesses and to resolve any inconsistencies in the evidence. *See Breeden v. State*, 2013 Ark. 145, at 5, 427 S.W.3d 5, 8–9.

### 3. *Sexual gratification*

Appellant's final sufficiency argument is that the State failed to prove "sexual gratification" for purposes of his domestic-battering conviction. This argument fails for two reasons. First, there is no sexual-gratification requirement for third-degree domestic battering. One commits third-degree domestic battering by recklessly causing physical injury to a family or household member. Ark. Code Ann. § 5-26-305(a)(2) (Supp. 2023).

To the extent that appellant attempts to challenge the sexual-gratification component of either the rape or sexual-assault convictions, his argument is not preserved for appeal because he did not challenge the sexual-gratification element in his initial directed-verdict motion. A directed-verdict motion is a challenge to the sufficiency of the evidence and requires the movant to apprise the circuit court of the specific basis on which the motion is

---

[9]A minor is defined as "a person who is less than eighteen (18) years of age." Ark. Code Ann. § 5-14-101(7) (Repl. 2013).

made. *King v. State*, 2018 Ark. App. 309, at 4 (citing *Rounsaville v. State*, 372 Ark. 252, 256, 273 S.W.3d 486, 490 (2008)). Arguments not raised at trial will not be addressed for the first time on appeal, and parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of the objections and arguments presented at trial. *Id.* Because appellant failed to argue in his initial directed-verdict motion that the State did not prove sexual gratification, his argument is not preserved for appeal.

## B. Improper Burden Shifting

Finally, appellant argues that the State impermissibly attempted to shift the burden of proof during its closing argument in rebuttal. At trial, appellant presented the testimony of an expert witness who asserted that the victim's scar was not likely caused by a knife as claimed by the victim. In its rebuttal during closing arguments, the prosecutor suggested that the defense should have spent its money on challenging other evidentiary items instead of hiring its expert witness. Appellant now argues that the court abused its discretion in permitting the State to comment on items that were not in evidence and on his failure to call other witnesses. This, he contends, amounted to the State's shifting the burden to him to explain the absence of such evidence.

However, appellant's argument in this regard, as with the others, is not preserved for appeal because he failed to object to the prosecutor's statements below. Our courts have frequently held that a contemporaneous objection must be made to the circuit court before we will review an alleged error on appeal. *Jones v. State*, 2024 Ark. App. 283, 689 S.W.3d 98.

On the basis of the foregoing, we affirm.

16

Affirmed.

KLAPPENBACH and WOOD, JJ., agree.

*Lisa-Marie Norris*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., and *Michael Frost*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the Supervision of *Darnisa Evans Johnson*, Deputy Att'y Gen., for appellee.