Cite as 2025 Ark. 10

# SUPREME COURT OF ARKANSAS

**No.** CR-23-731

| | | |
|---|---|---|
| HUNTER DE LA GARZA | | **Opinion Delivered:** February 13, 2025 |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-22-412] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE BRAD KARREN, JUDGE |
| | APPELLEE | AFFIRMED. |

**CODY HILAND, Associate Justice**

Hunter de la Garza appeals his rape conviction and life sentence arising out of the Benton County Circuit Court. De la Garza asserts three points on appeal: (1) there was insufficient evidence to support his conviction; (2) the circuit court abused its discretion when it permitted certain witness testimony at trial; and (3) the circuit court erred in denying a mistrial and a motion for a new trial after several of the prosecutor's comments during trial were prejudicial to him. We affirm.

## I. *Factual Background*

De la Garza is a former employee of the Northwest Arkansas Children's Shelter (the "Shelter") in Bentonville, Arkansas. While employed at the Shelter as a youth-care specialist, de la Garza worked with a variety of minor children. On February 2, 2021, almost a year after gaining employment at the Shelter, de la Garza was permitted to take Minor Victim—a ten-year-old female and resident of the Shelter—to the Pinnacle Hills Promenade Mall in Rogers, Arkansas for "one-on-one" time as a reward for her good behavior.

According to Minor Victim's testimony at trial, during the outing, Minor Victim requested to use the restroom. De la Garza escorted Minor Victim to the women's restroom and followed her inside. When Minor Victim attempted to leave, de la Garza grabbed Minor Victim by the arm and pulled her into one of the stalls. De la Garza closed and blocked the stall door, undressed Minor Victim, and then removed his own pants. Minor Victim then testified that De la Garza proceeded to put his penis "inside of" her vagina.

After the rape, de la Garza told Minor Victim to get dressed and pulled his own pants up. They both then exited the stall. De la Garza instructed Minor Victim to leave the restroom first and he would follow behind her. De la Garza and Minor Victim walked around the mall for a short time, and de la Garza told Minor Victim "not to tell anyone" about the rape. De la Garza then took Minor Victim back to the Shelter.

Once back at the Shelter, Minor Victim disclosed the rape to a friend and her older brother, who later informed an adult about his sister's rape. In early April 2021, after a previous unsuccessful attempt by mental health professionals at the Child & Family Advocacy Center of Benton County (the "Center"), Minor Victim disclosed her rape to an interviewer. The Shelter's director of youth services at the time, who is trained in psychology and clinical mental health counseling, testified that Minor Victim suffered from increased "dysregulation of emotion," self-harm, and increased behavioral changes after the rape. Additionally, Minor Victim drew several sexually graphic images about her rape. A counselor and therapist at the Bentonville Counseling Collective (the "Collective") reviewed these graphic drawings and opined that Minor Victim suffered from sexual abuse.

After receiving a tip from the Arkansas State Police, detectives at the Rogers Police Department interviewed de la Garza. The detectives testified de la Garza was able to recall incredibly specific details of his outing with Minor Victim both prior to and after her going to the restroom (e.g., route to and from the mall, where they parked, other stores near Hot Topic® where they shopped, Minor Victim's outfit that day, and what Minor Victim bought and how much it cost). However, he could not initially recount Minor Victim going to the restroom. During a break in the interview, one of the detectives observed de la Garza "rehearsing" his story about Minor Victim and the restroom. As the interview resumed, de la Garza changed his story about Minor Victim and the restroom.

Now, de la Garza stated that he purchased sodas for himself and Minor Victim at a vending machine near a restroom. Next, he recalled that Minor Victim did go to the restroom and that he stood and waited on her. De la Garza then offered two conflicting recollections of what happened: first, that he accompanied Minor Victim into the restroom because another individual was inside; and second, that he went into the restroom only because Minor Victim called for his help twice and did not respond when he asked if she needed help.

There was another allegation of similar conduct against de la Garza. Prior to trial, de la Garza filed a motion in limine to exclude the testimony of Minor Witness, another young female resident at the Shelter. The circuit court denied de la Garza's motion and permitted the use of Minor Witness's testimony under this court's "pedophile exception." Minor Witness testified that de la Garza touched her body in a way that she did not like and that hurt her. This occurred more than once. Specifically, Minor Witness testified that de

la Garza would take her into a private room to change her diaper and touch "inside" of a "hole" on her body "down there." Minor Witness was six-years old at the time of her assaults.

De la Garza contends that throughout the State's case-in-chief and closing argument, the prosecutor made several prejudicial comments that are the basis of his third point on appeal. We address each of those comments in turn below.

Ultimately, the jury found de la Garza guilty and sentenced him to life in prison. De la Garza filed a motion for a new trial arguing the same points on this direct appeal. The circuit court held a hearing and denied de la Garza's motion for a new trial in a comprehensive order. He appeals.

II. *Law and Analysis*

A. Sufficiency of the Evidence

Sufficient evidence at trial supports affirming de la Garza's rape conviction and life sentence. De la Garza's first claim is that the circuit court erred by denying his motion for directed verdict. He argues that no sexual act could have occurred between him and Minor Victim because her testimony portrayed a "physical impossibility."

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Ward v. State*, 2023 Ark. 158, at 4, 676 S.W.3d 270, 273. When reviewing the appellant's challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* at 4–5, 676 S.W.3d at 273. We will affirm the verdict if substantial evidence supports it. *Id.* at 5, 676 S.W.3d at 273. Substantial evidence is evidence of sufficient force and character that it will, with reasonable

4

certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*, 676 S.W.3d at 273.

A victim's firsthand account about rape is not circumstantial evidence but is instead direct testimony about what they "saw, heard, or experienced." *Doucoure v. State*, 2024 Ark. 162, at 5, 698 S.W.3d 643, 646 (quoting *Break v. State*, 2022 Ark. 219, at 4, 655 S.W.3d 303, 307). Even standing alone, a victim's testimony constitutes substantial evidence to support a rape verdict. *Id.*, 698 S.W.3d at 646. In resolving conflicting testimony and inconsistent evidence, it is the jury's role to assess witness credibility and resolve discrepancies in the evidence. *Doucoure*, 2024 Ark. 162, at 4, 698 S.W.3d at 646; *Ward*, 2023 Ark. 158, at 5, 676 S.W.3d at 273.

Further, the jury is entitled to accept the State's version of the facts over the defendant's, to resolve any inconsistent testimony, and to accept or reject any alternative theories. *Ward*, 2023 Ark. 158, at 5, 676 S.W.3d at 273. Lastly, the jury need not disregard common sense when evaluating the facts and may infer guilt from implausible explanations of incriminating behavior. *McPherson v. State*, 2024 Ark. 163, at 8, 699 S.W.3d 79, 84; *Hyatt v. State*, 2018 Ark. 85, at 12–13, 540 S.W.3d 673, 680 (citing *Martin v. State*, 346 Ark. 198, 57 S.W.3d 136 (2001)). Thus, a defendant's false or inconsistent statements may be considered by the jury as evidence of guilt. *Hyatt*, 2018 Ark. 85, at 13, 540 S.W.3d at 680.

At trial, the State had the burden to prove that de la Garza "engage[d] in *sexual intercourse* or *deviate sexual activity* with another person . . . who is less than fourteen (14) years of age." Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2021) (emphasis added). "Deviate sexual activity" is "any act of sexual gratification involving . . . [t]he penetration,

5

however slight, of the labia majora or anus of a person by any body member . . . manipulated by another person[.]"   Ark. Code Ann. § 5-14-101(1)(B) (Supp. 2021).   "Sexual intercourse" is the "penetration, however slight, of the labia majora by a penis[.]"   Ark. Code Ann. § 5-14-101(1) & (13) (Supp. 2021).

De la Garza contends that the height difference between himself (six-foot, one-inch) and Minor Victim (four-foot, ten-inches) would make it impossible for him to have committed a rape on Minor Victim within the confines of a restroom stall.   De la Garza's argument is that the described rape was a "physical impossibility" as his penis would be positioned at Minor Victim's chest and nowhere near her vagina.   However, Minor Victim testified that de la Garza followed her into a restroom, pulled her into a stall, and closed and blocked the stall door.   He then forcibly undressed her, undressed himself, and penetrated her vagina with his penis.

Under our law, Minor Victim's direct testimony is considered substantial evidence of her rape.   Furthermore, several other instances of Minor Victim's behavior presented at trial supported the verdict.   Minor Victim confided in another child and her brother that de la Garza raped her on their outing.  Adults at the Shelter observed Minor Victim's behavioral changes, dysregulation of emotion, and self-harm, which were all consistent with descriptions of behavior exhibited by a child who suffered sexual abuse.  Minor Victim was interviewed at the Center where she disclosed her rape to a trained civilian interviewer. Minor Victim's graphic drawings were analyzed by a licensed professional at the Collective who confirmed that she had been sexually abused.  All of this evidence was presented to the jury.

Additionally, the detectives testified about their interview with de la Garza, which was riddled with inconsistencies. De la Garza could recall extremely finite and peculiar details about the outing but could not initially recall anything about Minor Victim using the restroom. As the interview continued, de la Garza recounted five different versions of Minor Victim's restroom visit. As testified by one detective, de la Garza—while alone in the interview room—was observed rehearsing his story about why he went near, to, and/or into the restroom with Minor Victim. This evidence of false and inconsistent statements supported the jury's verdict.

De la Garza's assertion that rape is physically impossible does not make it so. Juries are entitled to resolve any inconsistencies in the presented testimony and weigh it. It is clear that in the present situation they did so in a manner consistent with their verdict.

Considering Minor Victim's testimony, the testimony of other witnesses, and the other evidence discussed above, the jury concluded that de la Garza's guilt was proven beyond a reasonable doubt, resolving any potential inconsistencies in Minor Victim's testimony, and found de la Garza guilty of rape. Therefore, substantial evidence existed at trial for the circuit court to properly deny de la Garza's motion for directed verdict. Thus, the circuit court did not err in denying his motion for directed verdict.

## B. Admissibility of Witness Testimony

De la Garza's second claim is that the circuit court abused its discretion when it admitted Minor Witness's testimony at trial. Specifically, he argues that Minor Witness's testimony was improperly admitted propensity testimony, which is not permitted under the general exceptions to Rule 404(b) of the Arkansas Rules of Evidence. Contrary to de la

Garza's argument, the circuit court permitted Minor Witness's relevant testimony under the "pedophile exception" to Rule 404(b). We find no abuse of discretion.

"A circuit court's decision to admit evidence is entitled to great weight and will not be reversed absent an abuse of discretion." *Nelson v. State*, 2024 Ark. 24, at 16, 683 S.W.3d 177, 191. "Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration." *Id.*, 683 S.W.3d at 191.

Rule 404(b) bars "[e]vidence of other crimes, wrongs, or bad acts . . . to prove the character of a person in order to show that he acted in conformity therewith." Ark. R. Evid. 404(b). The general exceptions to Rule 404(b) allow that such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ark. R. Evid. 404(b). However, there exists another exception to Rule 404(b).

This court's pedophile exception to Rule 404(b) states that "evidence of similar acts with the same or other children *is allowed to show a proclivity for a specific act* with a person or class of persons with whom the defendant has an intimate relationship." *Smith v. State*, 2016 Ark. 417, at 6, 504 S.W.3d 595, 599 (emphasis added). For this pedophile exception to apply, there must be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *Id.*, 504 S.W.3d at 599. There must also exist an "intimate relationship" between the perpetrator and the victim of the prior act. *Id.*, 504 S.W.3d at 599. An "intimate relationship" can mean a "close friendship or acquaintance, familiar, near, or confidential." *Id.* at 6–7, 504 S.W.3d at 599 (quoting *Parish v. State¸* 357

8

Ark. 260, 163 S.W.3d 843 (2004)). In *Smith*, we opined that this intimate relationship extends to situations where a child lived in the same house, or was an overnight guest at a perpetrator's home, as well as a perpetrator who babysat a child or had access to a child. *Id.* at 7, 504 S.W.3d at 599.

Though the circuit court in this present scenario did not explicitly employ the pedophile exception in its order, de la Garza argued the applicability of the pedophile exception in its motions in limine, and the State defended its applicability before the circuit court. Further, the circuit court's language in its order addressing de la Garza's motion is akin to that of a pedophile-exception analysis.

There is a sufficient degree of similarity between the evidence introduced during Minor Witness's testimony, Minor Victim's testimony, and the other pertinent facts of the case. Minor Witness and Minor Victim were young female children—both under twelve years of age—who were residents at the Shelter. De la Garza was an employee at the Shelter where he maintained a position of authority and guidance over both Minor Witness and Minor Victim. The relationships between de la Garza and Minor Witness, and de la Garza and Minor Victim are similar.

De la Garza placed his hand "inside of" Minor Witness's vagina when changing her diaper in a private, locked restroom more than once. De la Garza placed his penis "inside of" Minor Victim's vagina when he forced her into a restroom stall while on a private outing. De la Garza's rape of Minor Witness, and de la Garza's rape of Minor Victim are sufficiently similar. Thus, the circuit court weighed these uniquely similar circumstances.

9

Therefore, the circuit court did not abuse its discretion as it did not act improvidently, thoughtlessly, or without due consideration when it admitted Minor Witness's testimony.

## C.  Prosecutorial Commentary During the Trial

De la Garza's third claim is that several prosecutorial comments made during the State's case-in-chief and closing argument were improper and reversible error, entitling him to either a mistrial or a new trial.  While imprudent and gratuitous, these numerous comments do not entitle him to such relief.  These comments are divided into three categories:  (1) comments made during the State's closing argument unobjected to by de la Garza; (2) comments made during the State's case-in-chief and closing argument objected to by de la Garza, but no further relief was requested; and (3) a comment made during the State's closing argument unobjected to by de la Garza, with no exception under this court's *Wicks v. State* analysis.

### 1. *Prosecutorial comments made during the State's closing argument unobjected to by de la Garza*

De la Garza argues that four prosecutorial comments impute guilt to him as they relate to Minor Witness, though he was not on trial for what happened to her.

| | |
|---|---|
| PROSECUTION: | . . . what are the odds of *both of them* coming in here and painfully telling you about the time that Mr. Hunter penetrated *them*?  [Emphasis added.] |
| PROSECUTION: | Do you have an abiding conviction that Mr. Hunter preyed on *these little girls*?  [Emphasis added.] |
| PROSECUTION: | If you have an abiding conviction that you know that the little *girls* that came up here, and all the other witnesses, that Mr. Hunter had the opportunity and he purposely put himself in a place where there's no cameras so that he could do the same thing.  *Two little* |

> *girls, two bathrooms* where he has control of *two little lost sheep* isolated from the herd.  [Emphasis added.]

> PROSECUTION:    Let's talk about the *two little girls* that you got to meet over the last couple of days.  *Two little girls* came in here and they walked in the back door.  *They* came up in front of the gallery of people, in front of the jury box of strangers.  *They* sat right there and *they* had to speak in that microphone and talk about terrible things that have happened to *them*, things that *they* should not only not know about, *they* should never have to experience, and *they* certainly should never have to talk about. [Emphasis added.]

Next, de la Garza argues that two prosecutorial comments violate the Confrontation Clause of the Sixth Amendment to the United States Constitution.  He also argues that the first of which also imputes guilt to him as it relates to the Minor Witness, though he was not on trial for what happened to her.

> PROSECUTION:    *They certainly shouldn't have to be cross-examined* about *these* things, but *they* did that.  *They* came in here. [Emphasis added.]

> PROSECUTION:    *There wasn't, thankfully, a criminal defense attorney in the room towering over her to ask her a specific question . . . . Thankfully, that didn't happen in the CAC interview, but it happened here.* [Emphasis added.]

To preserve an argument for appeal regarding a prosecutor's comments made during the State's closing arguments, defense counsel must make a contemporaneous objection at the first opportunity.  *McNeil-Lewis v. State*, 2023 Ark. 54, at 9–10, 661 S.W.3d 195, 200.  The defense must also renew its objection each time the issue is raised.  *Scarbrough v State*, 2024 Ark. 71, at 15, 687 S.W.3d 557, 567.  Otherwise, the defense waives its argument regarding such issues on appeal.  *Id.*, 687 S.W.3d at 567.

We analyze these six prosecutorial comments in the aggregate. They were all made during the State's closing argument, and de la Garza did not contemporaneously object to any of them. Accordingly, his arguments are not preserved for appeal and are not properly before this court for review.

2. *Prosecutorial comments made during the State's case-in-chief and closing argument objected to by de la Garza, but without further relief requested*

De la Garza argues that one prosecutorial comment made during the State's case-in-chief imputes guilt to him as it relates to Minor Witness, though he was not on trial for what happened to her.

| | |
|---|---|
| PROSECUTION: | Do you find it curious that the *two girls* who have testified that you *raped them, both* made – [Emphasis added.] |
| DEFENSE: | *Objection, Judge.* [Minor Witness] never testified that he raped her. [Emphasis added.] |
| PROSECUTION: | Judge, [Minor Witness] testified that he penetrated her. |
| DEFENSE: | No. [Minor Witness] testified that there was inside and out. Never is – penetration was never brought up. |
| PROSECUTION: | Judge – |
| THE COURT: | *Objection sustained.* [Emphasis added.] |

De la Garza also contends that one prosecutorial comment made during the State's closing argument pointed out his failure to call an expert witness and was prejudicial to him.

| | |
|---|---|
| PROSECUTION: | I called an expert witness to talk about drawings. *Do you know who else could have called an expert witness* to talk about the effects of rape on the body? *The Defense.* [Emphasis added.] |
| DEFENSE: | *Objection, Judge.* That's burden shifting. [Emphasis added.] |

12

THE COURT:        Approach.

                  (Whereupon, the following proceedings occurred at the bench.)

THE COURT:        What's your objection?

DEFENSE:          It's burden shifting.

PROSECUTION:      He testified basically in his closing about all these things that would have to be present.  There's no evidence of those.

DEFENSE:          It's burden shifting.

THE COURT:        It's the State's burden.  *Objection sustained*.  [Emphasis added.]

DEFENSE:          Thank you.

When defense counsel contemporaneously objects to a prosecutorial comment made during the State's case-in-chief, and the circuit court sustains that objection, defense counsel must also immediately move for further relief.  *Ellis v. State*, 366 Ark. 46, at 9, 233 S.W.3d 606, 608 (2006); *see also Douglas v. State*, 2017 Ark. 70, at 2, 511 S.W.3d 852, 854. Otherwise, that issue will not be preserved for appeal.  *Ellis*, 366 Ark. 46, at 9, 233 S.W.3d at 608.

When an objection to a prosecutorial comment made during the State's closing argument is sustained, an appellant has been given all of the relief requested; consequently, there is no basis to raise the issue on appeal unless the appellant requests either an admonition to the jury or a mistrial.  *Howard v. State*, 367 Ark. 18, 42, 238 S.W.3d 24, 43 (2006) (quoting *Leaks v. State*, 339 Ark. 348, 355, 5 S.W.3d 448, 453 (1999)).  Otherwise, that issue will not be preserved for appeal.  *Id.*, 238 S.W.3d at 43.

We analyze these comments in a similar manner. De la Garza initially objected to the prosecution's use of the word "rape" in reference to Minor Witness's testimony and later objected to the prosecution's attempt to shift the burden onto him in reference to his lack of calling an expert witness. The circuit court sustained both objections. However, de la Garza did not immediately request any further relief in either scenario. Therefore, his arguments are not preserved for appeal and are not properly before this court for review.

3. *A prosecutorial comment made during the State's closing argument unobjected to by de la Garza, and no applicable exception under this court's* Wicks *analysis is available to him*

This court has prescribed four exceptions where we elect to review an issue of error not presented to the circuit court via a contemporaneous objection. *Goehler v. State*, 2023 Ark. 186, at 5, 678 S.W.3d 745, 749; *Marshall v. State*, 316 Ark. 753, 761, 875 S.W.2d 814, 819 (1994). The third exception imposes a "duty [on the circuit court] to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial." *Wicks v. State*, 270 Ark. 781, 786, 606 S.W.2d 366, 369 (1980). De la Garza relies on this exception for his final argument regarding the prosecutor's commentary.

De la Garza contends that this final prosecutorial comment required judicial intervention and thus entitles him to a new trial.

PROSECUTION: I have never said, and I will never say, that Hunter [de la Garza] had any kind of master plan. I will never say that he's a smart rapist. *And just because his lawyer knows better ways to rape a kid than he does doesn't mean that he's innocent.* There are lots of ways to commit crimes better. If there's anybody in the county that can get away with a crime, it's probably me because I've prosecuted enough of them. [Emphasis added.]

14

This comment does not compel us to invoke the third exception of our *Wicks* analysis.

This court has never recognized that a *Wicks* exception applies to improper comments by a prosecutor during closing arguments. *Harris v. State*, 2023 Ark. 64, at 22–24, 663 S.W.3d 355, 368. Relying on our holding in *Chunestudy v. State*, we have only extended the third *Wicks* exception to review issues of a criminal defendant's right to a twelve-person jury, informing juries on a point of law once deliberations have begun, and statements during voir dire that shift the burden of proof. 2012 Ark. 222, at 10, 408 S.W.3d 55, 62–63; *see also White v. State*, 2023 Ark. 90, at 10, 667 S.W.3d 533, 540; *Douglas v. State*, 2017 Ark. 70, at 4–5, 511 S.W.3d 852, 855.

This court has had ample opportunity to expand this exception to encompass other instances requiring its application—namely those similar to de la Garza's; however, we have routinely refused to do so. *Harris*, 2023 Ark. 64, at 22, 663 S.W.3d at 368 ("[W]e have previously refused to apply the exception to potential prosecutorial errors during closing arguments."). We refuse to do so now, as well. Thus, de la Garza's argument is not preserved for appeal and not properly before this court for review.

### III. *Conclusion*

In light of our well-set precedent governing challenges to the sufficiency of the evidence presented at trial, the admissibility of witness testimony under this court's pedophile exception, and the arguments presented here on appeal, de la Garza is unpersuasive. Furthermore, de la Garza's arguments regarding prosecutorial commentary were not preserved for appeal, and we will not consider them. We affirm.

### IV. *Rule 4-3(a) Review*

Because de la Garza received a life sentence, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to him in compliance with Arkansas Supreme Court Rule 4–3(a). No prejudicial error was found.

Affirmed.

*Osborne & Wilmoth Law Firm*, by: *Sammi Wilmoth*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.