Cite as 2023 Ark. 158

# SUPREME COURT OF ARKANSAS
**No.** CR-23-130

| | | |
|---|---|---|
| KAYVON WARD | | **Opinion Delivered:** November 2, 2023 |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-20-200] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE MARCIA R. HEARNSBERGER, JUDGE |
| | APPELLEE | AFFIRMED. |

**CODY HILAND, Associate Justice**

Kayvon Ward appeals his convictions of first-degree murder and aggravated assault on a law enforcement officer from the Garland County Circuit Court, arguing that the circuit court erred in denying his motions for directed verdict on both charges in that the evidence presented at trial was insufficient to support his convictions. As substantial evidence clearly supports his convictions, we affirm.

*Factual Background*

On March 10, 2020, Officer Brent Scrimshire conducted a routine traffic stop on Kayvon Ward after he witnessed Ward run a stop sign. Unbeknownst to Officer Scrimshire, Ward had an active felony warrant for first-degree battery for a shooting he admittedly committed and was in possession of the same firearm when he was stopped. Ward was driving a vehicle that did not belong to him with his two-year-old daughter in the backseat who was not secured in a car seat. Officer Scrimshire approached the vehicle and asked Ward for his license and registration, to which Ward responded that he had neither. When

asked for his information, Ward lied to Officer Scrimshire—he said his name was "Charles Dickens," that he had no middle name, that his date of birth was January 3, 1997, that he was twenty-two years old, and that he didn't know his Social Security number. When this false information given by Ward did not return as a match to any individual in the system, Officer Scrimshire asked Ward again for his information. Ward repeatedly told the same lies, never once giving accurate information to any responding law enforcement officer.

During this time, after hearing about the stop on his police radio, another law enforcement officer, Anthony Larkin, responded to the scene to assist Officer Scrimshire. Although the officers were still trying to determine Ward's identity, they allowed him to call the child's mother, and Officer Scrimshire gave her directions to their precise location all because he was concerned about the safety of the child. During the entirety of this interaction, as documented by dash-camera footage, Officer Scrimshire was decidedly polite to Ward. In fact, despite his suspicions that Ward might be lying about his information, he even stated, "[W]e'll figure this out, all right? I'm gonna do the best I can to give you a break on all this stuff, okay?"

Once the mother arrived on scene, the scenario drastically changed for the worse. As the officers moved toward the back of the car to speak with her and the officers' attention was diverted, Ward attempted to get out of the vehicle. At this time, the officers were forced to attempt to detain him in some way for their own safety. Ward was actively resisting arrest and yelling, "[Y]ou can't arrest me!" At that point, Ward was pulled out of the car and the officers attempted to detain him on the ground. While the officers were trying to secure the handcuffs, the mother attacked both officers, ultimately choking Officer Larkin to the point

that he loosened his grip on Ward, which allowed Ward to free himself and flee. A chase ensued.

First, Officer Larkin attempted to deploy nonlethal force, via taser, but when Ward jumped a fence, the lengthy wires ended up wrapped around Officer Larkin's own leg. Officer Scrimshire attempted to tase Ward a second time, but this use of force also failed to stop Ward. The chase continued around the side of a house where the officers were abruptly met by Ward who had pulled out his gun, aiming it at the officers. After Ward initiated the shooting, both Officer Scrimshire and Officer Larkin dropped their tasers and returned fire. As heard on the audio recording, Officer Scrimshire screamed out in pain. Ward, however, attempted to flee again, but ultimately fell to the ground after being shot several times. Officer Larkin radioed for help while he simultaneously tried to plug Officer Scrimshire's bullet hole and keep Ward detained until other officers arrived to secure the scene.

Once the ambulance arrived, the decision was made to transport Ward to the hospital first as he had a better chance of survival. Officer Scrimshire was hit once under his collarbone, but above his ballistics vest. According to the medical examiner, the bullet "did a severe amount of damage," which resulted in a "tremendous amount of rapid bleeding." Although officers attempted life-saving procedures, they lost Officer Scrimshire's pulse at the scene and were unable to revive him. Officer Scrimshire was taken to the hospital but was pronounced dead upon arrival. Notably, the gun used by Ward to murder Officer Scrimshire was the same gun used to shoot another individual approximately seven months earlier.

Ward was charged in the Garland County Circuit Court with capital murder with an enhancement for using a firearm, aggravated assault on a law enforcement officer, possession of a defaced firearm, resisting arrest, fleeing, and obstructing governmental operations. The criminal information submitted by the State alleged that Ward "should receive the death penalty." The jury trial took place over a nine-day period, whereby numerous witnesses testified, and an abundance of exhibits were produced. The witnesses included, but were not limited to, Officer Larkin, Kayvon Ward, and several forensic psychologists testifying as experts for both the State and for Ward regarding Ward's mental condition. The exhibits included, but were not limited to, the dash-camera video footage and audio recordings from Officer Scrimshire and Officer Larkin's interaction with Ward during the traffic stop and the following altercation. On July 29, 2022, after the jury trial concluded, the jury retired for deliberations at 10:59 a.m. After approximately twenty-seven minutes, the court was notified the jury had its verdict—guilty. Ward was convicted of the lesser-included offense of first-degree murder and the other charges listed above. Ward received an aggregate term of two life sentences, plus an additional twenty-one years. This timely appeal followed.

*Standard of Review*

Ward challenges the sufficiency of the evidence supporting his convictions by arguing that the circuit court erred in denying his motions for directed verdict on the charges of first-degree murder and aggravated assault upon a law enforcement officer.

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *McClendon v. State*, 2019 Ark. 88, at 3, 570 S.W.3d 450, 452. In reviewing

4

this challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.*, 570 S.W.3d at 452. We will affirm the verdict if substantial evidence supports it. *Id.*, 570 S.W.3d at 452. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*, 570 S.W.3d at 452. This court does not weigh the evidence presented at trial or assess the credibility of the witnesses, as those are matters for the fact-finder. *Halliburton v. State*, 2020 Ark. 101, at 10, 594 S.W.3d 856, 863. In resolving conflicting testimony and inconsistent evidence, the jury is entitled to choose to believe the State's account of the facts rather than the defendant's version. *Dunn v. State*, 371 Ark. 140, 147, 264 S.W.3d 504, 508 (2007). It is the jury's prerogative to resolve inconsistent testimony and accept or reject any alternative theories. *Norris v. State*, 2010 Ark. 174, at 2, 368 S.W.3d 52, 54.

*Points on Appeal*

With these standards in mind, we turn to Ward's sufficiency-of-the-evidence arguments. First, Ward committed first-degree murder, if, with the purpose of causing the death of another person, Ward caused the death of another person. *See* Ark. Code Ann. § 5-10-102(a)(2) (Supp. 2021). Ward argues that the State failed to present substantial evidence that Ward *purposely* caused the death of Officer Scrimshire.

Second, Ward committed aggravated assault on a law enforcement officer if Ward knowingly discharged a firearm with a purpose to cause serious physical injury or death to a law enforcement officer while the law enforcement officer was acting within the scope of his official duties, and Ward was acting with a purpose to avoid or prevent an arrest or to

5

escape from custody. *See* Ark. Code Ann. § 5-3-211(a)(2)(F) (Repl. 2013). Ward argues that the State failed to provide substantial evidence that Ward discharged his weapon with the *purpose* to cause serious physical injury or death to a law enforcement officer.

For both convictions of first-degree murder and aggravated assault on a law enforcement officer, Ward argues that there was insufficient proof presented to the jury that Ward was capable of forming the requisite mental state given his provisional diagnosis of schizophrenia.

"A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result." Ark. Code Ann. § 5-2-202 (Repl. 2013). Intent is seldom capable of proof by direct evidence and must usually be inferred from the circumstances surrounding the killing. *Starling v. State*, 301 Ark. 603, 786 S.W.2d 114 (1990). The intent necessary for first-degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Garza v. State*, 293 Ark. 175, 735 S.W.2d 702 (1987). We have said that "it is axiomatic that one is presumed to intend the natural and probable consequences of his actions." *Carter v. State*, 324 Ark. 249, 252, 921 S.W.2d 583, 585 (1996) (quoting *Akbar v. State*, 315 Ark. 627, 629, 869 S.W.2d 706, 707 (1994)). The purpose to commit a crime can be formed in an instant. *Tarentino v. State*, 302 Ark. 55, 786 S.W.2d 584 (1990); *see Hayes v. State*, 2020 Ark. 297.

At trial, Ward admitted he knew pointing a gun at someone and pulling the trigger could cause their death. Further, Ward admitted that he fired his gun in the direction of both Officer Scrimshire and Officer Larkin. Ward even admitted that he fired the specific

bullet that, in fact, caused the death of Officer Scrimshire. When asked why he shot at the officers, Ward stated that the officers fired first, so he fired back because "he was in fear for his life"—his intention was to get away, not to kill anyone. However, conflicting testimony was presented by Officer Larkin, who stated that when he and Officer Scrimshire rounded the corner of the house during the foot chase, Ward was "facing [them] and he had his gun out and he was firing at [them]." Officer Larkin further testified that Ward was holding his gun with both hands, and that Ward shot first.

After the State rested its case, Ward attempted to raise the affirmative defense of "mental disease or defect" by putting on testimony from a forensic psychologist expert who "provisionally" diagnosed Ward with schizophrenia on July 15, 2022—the Friday before the trial began and over two years after Ward murdered Scrimshire. Ward's expert testified that he did not have any concerns about Ward's capacity to stand trial and that he "[didn't] have an opinion on criminal responsibility in [his] report because [Ward] wouldn't talk to [him] about it." The State put on experts as rebuttal witnesses, including forensic psychologists and neuropsychologists, who also evaluated Ward and testified it was their determination that Ward had no diagnosis of any mental-health disorder and never observed any symptoms of such. Most importantly, even when asked probing questions during direct examination, Ward never testified, in any way, that he ever suffered from schizophrenia or that he experienced any symptoms on March 10, 2020.

The majority of factors required to support Ward's convictions are undisputed: (1) Ward caused the death of Officer Scrimshire; (2) Ward knowingly discharged a firearm at Officer Scrimshire and Officer Larkin while they were acting within the scope of their

official duties; and (3) Ward was acting to avoid or prevent an arrest or to escape from custody. The remainder of Ward's arguments are simply challenges to the credibility of the witnesses at trial. Here, it's quite simple—the jury believed the testimony of Officer Larkin over the testimony of Kayvon Ward, and it believed the State's expert witnesses over the expert for the defense, finding that Ward's defense of mental disease or defect was meritless. These determinations were strictly within the purview of the jury, and its conclusions reflected the evidence presented. The State unquestionably provided sufficient evidence for the jury to reach the decision that (1) Kayvon Ward *purposely* caused the death of Officer Scrimshire, and (2) Kayvon Ward knowingly discharged a firearm with a *purpose* to cause serious physical injury or death to Officer Larkin while Officer Larkin was acting within the scope of his official duties and Ward was acting with a purpose to avoid or prevent an arrest or to escape from custody. The circuit court did not err in denying Ward's motions for directed verdict; thus, Ward's convictions for both first-degree murder and aggravated assault on a law enforcement officer are both affirmed.

*Rule 4-3(a) Review*

Because Ward received a life sentence, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to him in compliance with Arkansas Supreme Court Rule 4-3(a) (2021), and no prejudicial error has been found.

Affirmed.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.

8