Cite as 2024 Ark. 162
# SUPREME COURT OF ARKANSAS
**No.** CR–24–349

|  |  |  |
|---|---|---|
| BELLOT DOUCOURE | APPELLANT | **Opinion Delivered:** October 31, 2024 |
| | | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT, FIRST DIVISION |
| V. | | [NO. 04CR–22–1443] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE ROBIN GREEN, JUDGE |
| | | <u>AFFIRMED</u>. |

**RHONDA K. WOOD, Associate Justice**

Bellot Doucoure received life in prison after a jury convicted him of three counts of raping a minor. The victim gave direct testimony at trial that Doucoure had raped her around twenty times. Doucoure now challenges the sufficiency of the evidence and the circuit court's decision to admit hearsay. We affirm (i) because the victim's testimony alone constituted substantial evidence to support the convictions and (ii) because the court did not abuse its discretion when it allowed limited hearsay testimony after defense counsel had "opened the door" to such an inquiry.

## I. *Factual Background*

Doucoure was charged with and convicted of three counts of raping his minor child. At trial, the victim testified that Doucoure had raped her many times. Doucoure told her that his religion required him to have sex with her. The victim said Doucoure continued raping her around twenty times. This occurred in multiple locations in their home.

The victim testified that Doucoure did not wear a condom and wiped himself off with the bed sheets. Scientific evidence was introduced to support this testimony—Doucoure's DNA was discovered on the victim's bedsheets and the victim's DNA was discovered on the inner fly of Doucoure's underwear. The victim also testified that she told Doucoure she needed to see a therapist. A few days later, a "therapist" texted her. The victim continued to communicate with this therapist via text messages. This "therapist" told the victim she should continue having sex with Doucoure. On cross-examination, the victim initially could not remember when these texts started. But phone records showed the messages having begun in March 2022. The victim testified that she eventually came to realize the "therapist" on the messages was Doucoure.

Courtney Doucoure testified. She was previously married to Doucoure. She maintained a relationship with the victim and occasionally gave her rides home from basketball games. During one of those rides, the victim disclosed that she had been "seeing" a therapist but that she and the therapist only texted one another. Courtney testified that the victim disclosed this in January 2022.

Connie Stave also testified at trial. She testified briefly on direct examination. She worked at a church that the victim attended. Stave often drove the bus that picked up the victim for church services, and the two became close. One day she went to lunch with the victim and the victim made disclosures. On the basis of their conversation, Stave took the victim to the Rogers Police Department.

On cross-examination, defense counsel asked Stave whether she had ever overheard a phone conversation between the victim and Destiny Smith, "in which—in your opinion

that there was something going on between [Doucoure and the victim.]" Stave responded, "[N]o. But I think I know what you're getting at, but it's not that I overheard a phone conversation." On redirect, the State asked Stave to elaborate on any conversation she'd had with Destiny. Defense counsel objected based on hearsay. The circuit court limited Stave's response, ruling as follows: "Well, you . . . opened the door a little bit here I think. So without getting into the particulars of exactly what was said in general, I'm going to allow it. You opened the door."

Stave then gave the following testimony about the conversation she had with Destiny about concerns the victim had with Doucoure:

> So basically Destiny pointed in the direction that she [victim] was uncomfortable around [Doucoure]. She felt like something—he was just making weird statements that were scaring her, making her uncomfortable, and I said well, Destiny, then you need to report that. And she was scared to do that, so I went out in the parking lot with Destiny and I took my cell phone and we called the hotline because, you know, it just needed to be reported.

> And . . . I handed the phone—we set it on speaker phone—and Destiny told the hotline person basically what I just told you all. That [the victim] was uncomfortable—

At that point, the circuit court cut off Stave's testimony. She answered a few more questions on redirect and, after brief recross examination, did not testify further.

The jury returned a guilty verdict on all three rape charges. Doucoure has now filed this appeal.

3

II. *Law and Analysis*

A. Sufficiency of the Evidence

Doucoure argues that the State failed to present substantial evidence to support each rape conviction. He bases this on two areas of inconsistencies at trial and on the alleged circumstantial evidence at trial. The inconsistencies involve whether the victim began texting with the "therapist" in January 2022 or in March 2022 and the timing of when the victim had intercourse with her boyfriend.

In addressing Doucoure's sufficiency challenge, we view the evidence in the light most favorable to the State and will affirm if substantial evidence, direct or circumstantial, supported the verdict. *See Kellensworth v. State*, 2021 Ark. 5, at 4, 614 S.W.3d 804, 807. We consider only evidence that supports the verdict. *Hartman v. State*, 2015 Ark. 30, at 5, 454 S.W.3d 721, 724. We do not reweigh the evidence presented at trial or assess the credibility of the witnesses, as those are matters for the jury. *See Fink v. State*, 2015 Ark. 331, at 3, 469 S.W.3d 785, 787. The jury may believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id*. The testimony of a rape victim, standing alone, is sufficient to support a conviction *Estrada v. State*, 2011 Ark. 3, at 5, 376 S.W.3d 395, 398.

We reject Doucoure's challenge to the sufficiency of the evidence. We only consider evidence that is favorable to the jury's verdict, and the jury was authorized to resolve any perceived inconsistencies. The inconsistencies raised were not critical but go to Doucoure's overarching claim that we should disregard the victim's entire testimony because the perceived inconsistencies render her entire narrative "inherently improbable, physically

4

impossible, or so clearly unbelievable that reasonable minds could not differ about it." *See Conte v. State*, 2015 Ark. 220, at 16, 463 S.W.3d 686, 698. But this is not the role of this court on appeal. The most pertinent evidence presented came from the victim's own testimony. She testified she was repeatedly raped. The jury was entitled to weigh all this evidence and reach a conclusion whether she was credible.

And her firsthand account about the rapes is not circumstantial evidence but direct testimony about what the victim "saw, heard, or experienced." *See Break v. State*, 2022 Ark. 219, at 4, 655 S.W.3d 303, 307. Standing alone, her testimony constituted substantial evidence to support the rape verdicts. We therefore affirm all three rape convictions.

## B.  Hearsay

Doucoure next argues that the circuit court should not have allowed Connie Stave to testify about a conversation she had with Destiny Smith. Doucoure maintains that any statements Destiny made were hearsay and should have been excluded. At trial, the circuit court allowed Stave to recount the conversation because defense counsel had opened the door on cross-examination.

We review a circuit court's decision to admit or exclude evidence for an abuse of discretion. *Keesee v. State*, 2022 Ark. 68, at 7, 641 S.W.3d 628, 635. We reverse only if the court acted improvidently, thoughtlessly, or without due consideration. *Bragg v. State*, 2023 Ark. 66, at 7, 663 S.W.3d 375, 381. "[O]therwise inadmissible testimony may be offered when one party has opened the door for another party to offer it." *Larimore v. State*, 317 Ark. 111, 120, 877 S.W.2d 570, 574 (1994). This rule of "verbal completeness" allows the jury to hear potentially inadmissible evidence to explain earlier testimony or to avoid

5

misleading them. *See Gordon v. State*, 326 Ark. 90, 98, 931 S.W.2d 91, 96 (1996) (Brown, J., concurring).

Here, defense counsel elicited testimony from Connie Stave about her conversation with Destiny about the victim. In response, Stave said she'd had no such conversation but that she knew what counsel was "getting at." The circuit court ruled that defense counsel's inquiry opened the door to limited additional testimony from Stave about that conversation. The court strictly limited the extent of that testimony beforehand, ruling that Stave could not testify about the "particulars" of the conversation. And when Stave's testimony began veering in that direction, the court *sua sponte* cut off the witness. Given the circuit court's ruling limiting the scope of Stave's testimony and the court's tight control of the witness's comments, we cannot find that the court acted improvidently, thoughtlessly, or without due consideration. We therefore hold the circuit court did not abuse its discretion.

III. *Rule 4-3(a) Review*

In compliance with Arkansas Supreme Court Rule 4–3(a), we have examined the record for all objections, motions, and requests made by either party that the circuit court decided adversely to the appellant. No prejudicial error has been found.

Affirmed.

*Dewitt & Daniels Law Firm*, by: *Joshua A. Daniels*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.