Cite as 2025 Ark. 45

# SUPREME COURT OF ARKANSAS
No. CR-24-143

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 24, 2025 |
| DENNIS HALE | | |
| | APPELLANT | APPEAL FROM THE SEVIER COUNTY CIRCUIT COURT [NO. 67CR-21-171] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE BRYAN LOYD CHESSHIR, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Dennis Hale was convicted of rape of a minor. He was sentenced to life imprisonment. Hale asks this court to reverse his conviction for one of the following three reasons. He argues that (1) there was insufficient evidence to convict him of rape; (2) the circuit court erred in finding that he waived his right to counsel; and (3) the circuit court erred in appointing LaTonya Austin as standby counsel. We affirm.

## I. *Facts and Procedural Background*

Dennis Hale began raping the minor victim (MV), his step-granddaughter, in roughly 2018 when she was eight years old. In September 2021, MV told her teachers that her step-grandfather had been raping her. Hale was then arrested and charged in Sevier County with one count of rape.

At an October 2021 hearing, the circuit court appointed Hale an attorney from the public defender's office. Because the attorney had a conflict, LaTonya Austin was appointed

to represent Hale in December 2021. On February 1, 2022, Hale filed a pro se petition for writ of habeas corpus in which he noted that Austin was appointed to represent him, but he did not recognize her as his attorney. He filed another pro se pleading on February 18, 2022, in which he requested to represent himself.

During a February 24, 2022, hearing, Hale informed the court that he did not wish to hire an attorney, he did not wish for Austin to represent him, and he would represent himself. The court warned Hale that he was facing a possible life sentence, that he was not trained in the law, and that representing himself in such a case would be equivalent to performing "open heart surgery" on himself. Hale told the court that he understood. The court again strongly advised Hale against representing himself and noted that it could prevent him from receiving a fair trial. Hale said he appreciated the court's concern and agreed to a continuance to allow the State to provide further discovery and to allow him time to review it with Austin.

On March 10, 2022, Hale filed another pro se pleading in which he requested to represent himself. He again said he did not want to be represented by Austin or any other attorney. He asked the court to honor his decision and remove Austin as his attorney. Nevertheless, Austin contacted Hale and attempted to discuss his case, but he refused. Austin told Hale that he was facing the possibility of a life sentence and of the risks associated with representing himself. Hale acknowledged to Austin that he understood the risks and still wanted to represent himself. As a result, Austin filed a motion to be relieved as counsel on April 28, 2022.

The court held a hearing on April 28, 2022, regarding Austin's motion to be relieved as counsel. At the hearing, Austin informed the court that Hale did not want legal representation and wished to proceed pro se. The court advised Hale of the complexities of criminal law and warned him against self-representation. Hale then requested additional time to consider his decision, and the court denied Austin's motion and continued the case.

On May 20, 2022, Austin filed a second motion to withdraw, citing Hale's continued refusal of representation. Hale filed a pro se motion on May 31, 2022, seeking to dismiss Austin as his counsel, reiterating that he did not want representation or co-counsel. He filed a subsequent pleading on July 18, 2022, affirming this position.

On August 25, 2022, the circuit court held a third hearing on the matter. Hale again confirmed that he wished to represent himself. The court questioned Hale about his legal knowledge and warned him of the consequences of self-representation. Austin informed the court that while Hale was not disrespectful, he refused to discuss the case with her. The court again cautioned Hale about the risks of proceeding pro se, including the potential for a life sentence and the inability to make an ineffective-assistance-of-counsel claim. Hale maintained his decision to represent himself.

The court recessed and upon returning found that Hale knowingly, intelligently, and unequivocally waived his right to counsel and allowed him to proceed pro se. The court permitted Austin to sit at counsel table as stand-by counsel during trial for assistance if Hale requested it.

At the start of trial on September 26, 2022, the court confirmed that Hale still wished to represent himself. The court reiterated that Hale was bound by the same rules as an

3

attorney. Hale affirmed his decision to waive counsel and acknowledged that Austin would not act as his co-counsel but would be available as standby counsel. Hale then proceeded to represent himself at trial, occasionally consulting with Austin.

At trial, MV testified in detail about the sexual abuse she suffered from Hale over a three-year period. In addition, the State presented evidence and testimony corroborating MV's account of events. When the State rested its case, Hale moved for a directed verdict, arguing that MV's testimony was not credible because it was not supported by physical evidence. The motion was denied.

Hale then put on his case. Hale elected not to testify, but he called his wife and stepdaughter. During direct examination of his wife, he was admonished several times by the court, which led to Hale consulting with Austin on his questioning. At the close of his case, Hale again moved for a directed verdict. The jury ultimately convicted Hale of rape and recommended a sentence of life imprisonment that was imposed by the circuit court. This appeal follows.

## II. *Discussion*

On appeal, Hale alleges three independent grounds for reversal. He claims that (1) there was insufficient evidence to convict him of rape; (2) the circuit court erred in finding that he waived his right to counsel; and (3) the circuit court erred in appointing LaTonya Austin as standby counsel. Hale is mistaken, and his conviction and sentence are affirmed.

## A. Sufficiency of the Evidence

Hale argues that there was insufficient evidence to support his conviction of rape. Specifically, he claims that MV's testimony that he raped her is not credible because it was

4

not supported by physical evidence. Hale made this same argument in support of his directed-verdict motions below. Hale misses the mark.

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence.[1] When reviewing the appellant's challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict.[2] We will affirm the verdict if substantial evidence supports it.[3] Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture.[4] A victim's firsthand account about rape is not circumstantial evidence but is instead direct testimony about what they "saw, heard, or experienced."[5] Even standing alone, a victim's testimony constitutes substantial evidence to support a rape verdict.[6] In resolving conflicting testimony and inconsistent evidence, it is the jury's role to assess witness credibility and resolve discrepancies in the evidence.[7] Further, the jury is entitled to accept the State's version of

---

[1] *Ward v. State*, 2023 Ark. 158, at 4, 676 S.W.3d 270, 273.

[2] *Id.* at 4–5, 676 S.W.3d at 273.

[3] *Id.* at 5, 676 S.W.3d at 273.

[4] *Id.*, 676 S.W.3d at 273.

[5] *Doucoure v. State*, 2024 Ark. 162, at 5, 698 S.W.3d 643, 646 (quoting *Break v. State*, 2022 Ark. 219, at 4, 655 S.W.3d 303, 307).

[6] *Id.*, 698 S.W.3d at 646.

[7] *Doucoure*, 2024 Ark. 162, at 4, 698 S.W.3d at 646; *Ward*, 2023 Ark. 158, at 5, 676 S.W.3d at 273.

the facts over the defendant's, to resolve any inconsistent testimony, and to accept or reject any alternative theories.[8] Lastly, the jury need not disregard common sense when evaluating the facts and may infer guilt from implausible explanations of incriminating behavior.[9]

This court has said time and again that a minor rape victim's uncorroborated testimony regarding penetration alone is sufficient evidence to support a conviction.[10] Here, the jury was instructed that it could find Hale guilty of rape if it concluded that he engaged in (1) sexual intercourse or deviate sexual activity with MV by forcible compulsion;[11] (2) sexual intercourse or deviate sexual activity with MV, who was less than fourteen years of age at the time at the alleged offense;[12] or (3) sexual intercourse or deviate sexual activity with MV, that she was less than eighteen years of age at the time at the alleged offense, and that Hale is her step–grandparent.[13]

---

[8]*Ward*, 2023 Ark. 158, at 5, 676 S.W.3d at 273.

[9]*McPherson v. State*, 2024 Ark. 163, at 8, 699 S.W.3d 79, 84; *Hyatt v. State*, 2018 Ark. 85, at 12–13, 540 S.W.3d 673, 680 (citing *Martin v. State*, 346 Ark. 198, 57 S.W.3d 136 (2001)).

[10]*See, e.g.*, *Hartley v. State*, 2022 Ark. 197, at 5, 654 S.W.3d 802, 806.

[11]Ark. Code Ann. § 5-14-103 (a)(1) (Repl. 2024). The jury also was instructed that deviate sexual activity is defined as any act of sexual gratification involving the penetration, however slight, of the anus or mouth of one person by the penis of another person, or the penetration, however slight, of the labia majora or anus of one person by any foreign instrument manipulated by another person. Ark. Code Ann. § 5-14-101 (1)(A), (B) (Repl. 2024). It was also instructed that forcible compulsion means physical force or a threat, express or implied, of death or physical injury to any person. Ark. Code Ann. § 5-14-101(3).

[12]Ark. Code Ann. § 5-14-103 (a)(3)(A).

[13]Ark. Code Ann. § 5-14-103 (a)(4)(A)(ii).

The jury considered the following testimony and evidence and convicted Hale of rape. MV testified that Hale penetrated her mouth with his penis while holding her head and pushing it up and down when she was less than fourteen years old. She testified that white stuff would come out and he would wipe it on red rags. She also testified that Hale would penetrate her vagina with a foreign instrument. MV also testified that Hale would take pills to make his "pee-pee" grow bigger. This testimony alone amounts to the substantial evidence necessary to affirm Hale's conviction and sentence. In addition, Brian Hankins, an investigator with the Sevier County Sheriff's Office, watched MV's forensic interview with the Arkansas State Police and used the information she gave to obtain a search warrant for Hale's property. During the search, police found the foreign object described by MV (a sex toy) in a plastic baggie, red rags in trash cans, and the pills described by MV. Hale's DNA was on the red shop towels. Because substantial evidence supports Hale's conviction, his sufficiency challenge fails.

## B. Waiver of Right to Counsel

Hale claims that the circuit court erred by allowing him to represent himself at trial. He is mistaken. The Sixth and Fourteenth amendments of the United States Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he or she can be validly convicted and punished by imprisonment.[14] This court has said that although the language differs, article 2, section 10

---

[14] *Faretta v. California*, 422 U.S. 806, 807 (1975).

7

of the Arkansas Constitution provides the same right.[15]  The standard applied by this court

for waiver of the right to counsel is largely the same as the federal standard, as both are

rooted in the Sixth Amendment to the United States Constitution as interpreted in *Faretta*

*v. California*, 422 U.S. 806 (1975).

The right to counsel may be waived by the accused if the waiver is made "knowingly

and intelligently."[16]  This does not mean that the accused must have the skill and experience

of an attorney to choose self-representation.[17]  Instead, the accused need only be warned of

the dangers and disadvantages of self-representation.[18]  If the record reflects that the accused

was properly warned, then he or she has made a knowing and intelligent waiver.[19]  In

addition, the waiver must be unequivocal and timely asserted.[20]  Finally, the accused cannot

engage in conduct that would prevent the fair and orderly exposition of the issues.[21]

---

[15]"In all criminal prosecutions, the accused shall enjoy the right to . . . be heard by himself and his counsel."  Ark. Const. art. 2, § 10.  Though Hale cites article 2, section 10 once in his opening brief, he argues only that his Sixth Amendment right to counsel under the United State Constitution was violated.

[16]*Faretta*, 442 U.S. at 835.

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Mayo v. State*, 336 Ark. 275, 280, 984 S.W.2d 801, 804 (1999).

[21]*Id.*

The record in this case supports the conclusion that the circuit court committed no error in finding that Hale waived his right to counsel.[22]

### i. A timely, unequivocal, knowing, and intelligent waiver

Hale's waiver was made knowingly and intelligently because the record reflects that both the circuit court and Austin warned Hale of the dangers and disadvantages of representing himself. From the inception of this case all the way to trial, the circuit court explained to Hale that he was facing the possibility of life imprisonment, that the court had seen defendants convict themselves by self-representation, and that Hale was taking on that very risk. The circuit court also explained to Hale numerous times that he would be required to follow the same standards and protocols as an attorney and that he would be required to know court rules and procedures. The circuit court even gave Hale multiple examples of things he could not do if he represented himself. The circuit court explained to Hale that as a consequence of representing himself, any mistakes he made would not be grounds to request a mistrial or to later claim that he received ineffective assistance of counsel. In addition, the circuit court explained to Hale that he could not contact jurors once he received the juror list because it would be considered tainting the jury, or juror interference, which could result in an additional criminal charge. Similarly, Austin stated that she discussed with Hale the issues raised by the circuit court and informed him of the risks associated with self-representation. Although the circuit court and Austin advised (if

---

[22]On appeal, the appellate court looks at whether the circuit court's finding that waiver was proper was clearly against the preponderance of the evidence. *Bogard v. State*, 311 Ark. 412, 414, 844 S.W.2d 347, 349 (1993).

not pleaded with) Hale not to represent himself, he stated repeatedly that he unequivocally wished to represent himself.  Because the right to counsel can be waived at either the pretrial or trial stage, Hale's waiver was timely.[23]  Given these facts, it is clear that Hale made his timely and unequivocal choice to waive the right to counsel with eyes wide open.[24]

### ii.  Conduct at trial that prevents the fair and orderly exposition of issues

Despite his claims to the contrary, Hale did not engage in conduct at trial that prevented the fair and orderly exposition of issues.  Hale's primary argument here is that his lack of experience as a criminal defense attorney prevented a fair trial.  This very argument, however, has been held to be irrelevant to whether an accused has waived his or her Sixth Amendment right to counsel.[25]  Nothing in the record shows that Hale acted disruptively or behaved inappropriately during his trial.  In fact, he effectively handled jury selection, delivered his opening statement, examined witnesses, made directed-verdict motions, and interacted with Austin as standby counsel.  Accordingly, it's clear that his behavior did not

---

[23] *Walton v. State*, 2012 Ark. 336, at 7, 423 S.W.3d 56, 60.

[24] Arguing to the contrary, Hale relies primarily on *Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999), and *Scott v. State*, 298 Ark. 214, 766 S.W.2d 428 (1989).  His reliance is misplaced.  Both of these cases are factually distinct from the present case.  In *Scott*, this court remanded for a new trial when the record was completely silent on waiver of counsel. *Scott*, 298 Ark. at 218, 766 S.W.2d at 430.  Similarly, in *Bledsoe*, this court remanded for a new trial because "[t]he record d[id] not reflect that the trial court advised Mr. Bledsoe of the dangers and disadvantages of proceeding without an attorney."  *Bledsoe*, 337 Ark.at 409, 989 S.W.2d at 515.  The record in this case is replete with warnings issued to Hale.

[25] *Pierce*, 362 Ark. at 497–98, 209 S.W.3d at 368 (citing, in part, *Faretta*, 422 U.S. at 835–36).

interfere with the fair and orderly presentation of his case. For these reasons, the circuit court's finding that Hale properly waived the right to counsel is affirmed.

## C. Appointment of LaTonya Austin as Standby Counsel

For his final argument, Hale claims he was prejudiced when the circuit court appointed Austin as standby counsel. Specifically, he claims this deprived him of the "constitutional right to his choice of counsel and his right to have knowledgeable and effective counsel, standby or otherwise." He is again mistaken.

There is no constitutional right to "standby" counsel. Instead, the text of the Sixth Amendment of the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." As explained above, the Supreme Court of the United States has held that this right is waivable.[26] In so doing, it created a new right under the Sixth Amendment, the right of a criminal defendant to conduct his or her own defense.[27] This is often called the "*Faretta* Right." Once waived, the accused "relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel."[28] "Of course, a [s]tate may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.[29] Once standby counsel is

[26] *See supra*, note 14.

[27] *Id.* at 835.

[28] *Id.*

appointed, the area of concern becomes whether standby counsel's participation encroaches on the defendants *Faretta* right to self-representation, not whether the defendant has the right to choose standby counsel or even whether standby counsel's assistance is effective.[30] In any event, "[p]articipation by [standby] counsel with a pro se defendant's express approval is, of course, *constitutionally unobjectionable*."[31]

In this case, the circuit court expressly asked Hale if he wanted to have Austin serve as standby counsel after he had repeatedly and unequivocally stated to the circuit court that he did not want to be represented by any attorney and that he wanted to represent himself. Hale responded, "Yes, sir." For this reason alone, Hale cannot object to the appointment of Austin as standby counsel. Accordingly, his claim here fails.

### III. *Conclusion*

Despite Hale's claims to the contrary, absent from this case were any constitutional infirmities regarding his waiver of the Sixth Amendment right to counsel and the appointment of LaTonya Austin as standby counsel. Similarly, his claim that MV's testimony was insufficient to support his rape conviction is without merit. Hale's conviction and sentence are affirmed.

---

[29]*McKaskle v. Wiggins*, 465 U.S. 168, 176 (1984) (quoting *Faretta*, 422 U.S. at 834 n.46).

[30]*Id*. at 178 ("If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right is eroded.")

[31]*Id*. at 182 (emphasis added).

IV. *Rule 4-3(a) Requirement*

Because Hale received a sentence of life imprisonment, the record has been reviewed for all errors prejudicial to him as required by Arkansas Supreme Court Rule 4–3(a). No reversible error was found.

Affirmed.

Special Justice BILENDA HARRIS-RITTER joins.

BRONNI, J., not participating.

*Tara Ann Schmutzler*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.