Cite as 2026 Ark. App. 74

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-25-176

| | |
|---|---|
| TERRY MICHAEL WESLEY<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered February 4, 2026<br><br>APPEAL FROM THE HEMPSTEAD COUNTY CIRCUIT COURT [NO. 29CR-23-49]<br><br>HONORABLE DUNCAN CULPEPPER, JUDGE<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

A Hempstead County jury found appellant Terry Wesley guilty of rape of a person less than fourteen years of age pursuant to Arkansas Code Annotated section 5-14-103 (a)(3)(A)[1] and of knowingly exposing another person to human immunodeficiency virus (HIV) pursuant to Arkansas Code Annotated section 5-14-123.[2] Appellant's sentences were enhanced by the small habitual offender statute, Arkansas Code Annotated section 5-4-501,[3] and as a result, he was sentenced to an aggregate sentence of 110 years' imprisonment.

---

[1](Repl. 2024).

[2](Repl. 2024).

[3](Repl. 2024).

Appellant argues on appeal that the evidence is insufficient to support his convictions. We affirm.

MV[4] accused appellant, his uncle, of raping him on January 1, 2023. MV had stayed New Year's Eve night at his grandmother's house in Hope, Arkansas, with his father, Corey Wesley, Sr. MV, along with his sister and brother, had fallen asleep on the couch. At some point in the morning, someone, later identified as appellant, picked MV up off the couch and carried him into his grandmother's room and laid him on the bed. MV fell back asleep and was awakened by appellant touching his penis. He was subsequently told to open his mouth, which he did, and appellant put his penis into MV's mouth. MV was then instructed to stand up and turn around; appellant laid him on the bed and put his penis inside MV's anus "for a while." MV said he asked appellant to stop but that appellant just kept going, and when appellant was done, he tried to clean MV up with tissue. Appellant left the room and went to the couch. MV went to the bathroom to check himself and noticed "blood and this white material" coming out of him, and his anus was also hurting. According to MV, the appellant also sucked MV's penis. MV subsequently went into his father's room and used his father's cell phone to call his mother, Krystal Richard; he informed her that someone had touched him inappropriately. Richard picked MV up and took him to Wadley Regional Medical Center (Wadley) in Hope. His clothing, including a yellow hoodie, was removed, and he was questioned by detectives. MV was also swabbed for evidence. He was

---

[4]MV's date of birth is December 25, 2009.

2

subsequently transported to Arkansas Children's Hospital (ACH) by ambulance to have a rape kit administered.

Appellant was taken into custody by the Hope Police Department. He was interviewed the next day, and in that interview, appellant stated that he was awakened while on the couch by someone wearing a yellow-orange hood performing oral sex on him. He stated that when he tried to remove the hood, the person would not let him and told him to "just let [them] do it." He said that they went into the bedroom to continue, and all the while, the person kept on the hood. He stated that he knew they had sex but that "it wasn't like for real" because he could not get all the way erect. He said that he subsequently went back to sleep and woke up with a headache. He stated that he did not realize that the person he had sex with was MV until he saw MV sitting in Richard's car wearing a yellow hood. Appellant stated that he and MV gave each other oral sex and that he put his finger in MV's anus; however, he denied that either of them penetrated the other's anus with his penis. Appellant said that he ejaculated and that he believed that MV did too. Appellant admitted that he was diagnosed with HIV in 2015 but said that it was undetectable if he took his medicine. He insisted that his sexual contact was consensual, and he did not know that it was MV until later. He stated that he thought it was one of Corey's friends because it had happened like that before.

Appellant was subsequently charged by criminal information with the above charges. His jury trial took place July 29–31, 2024. MV testified in detail about the events of January 1, 2023. He stated that his mother was the one to tell him who appellant was based on the

description he gave her. MV was able to identify appellant during the trial as the person who had sex with him. Richard testified that on the date in question, MV had just turned thirteen. She stated that her children had gone to Hope to see Corey before he was incarcerated. She said that she received a call from MV on January 1 telling her that a "black bald-headed man" had touched him. She also said that MV told her that the person had money pinned on his shirt. She stated that when she got there to pick MV up, he was already coming outside, which was odd. She said that MV was wearing a yellow hoodie and gray shorts. Richard testified that MV eased into the seat, so she asked him if his "butt" hurt, and he responded yes. She said that she went inside and saw appellant and her other two children in the living room. She stated that she told Corey what MV had told her and asked him to watch their other two children while she took MV to the hospital. She stated that MV did not have a relationship with appellant before New Year's Eve: he had seen him less than five times. She said that she knew whom MV was talking about because she had previously seen appellant's Snapchat. Richard stated that she thought of appellant as a brother. She testified that MV had to use Corey's phone to call her because MV was being disrespectful the night before and had his phone taken as punishment. She said that she was horrified when she found out that appellant has HIV. She stated that MV must now be tested for HIV regularly.

Corey testified that there was a party at his mother's house in Hope on New Year's Eve because he was about to go to prison. He stated that appellant, who is his half brother, was present that night. He said that appellant was also celebrating his birthday that night.

4

He said that when he went outside to talk to MV about what had happened, appellant was in the house gathering his things to leave. Corey stated that MV did not tell him what happened until after appellant left. He testified on cross-examination that he went looking for appellant after Richard left with MV. Corey said that MV had a fight with Richard on New Year's Eve, so she dropped the children off with him. He stated that he does not hate appellant but that he has nothing to say to him.

Cassie Miller, a registered nurse, testified that she was working at Wadley the morning MV reported to the hospital complaining of a sexual assault. She stated that, initially, it seemed as though they did not know who had assaulted MV. She said that MV said the man grabbed him by the back of the neck and held him down and put his penis in MV's anus. MV described what the man was wearing, and when Corey overheard the description, he identified appellant as the suspect. Miller said that she wrote appellant's name down. She stated that she performed a visual exam of MV and did not notice any active bleeding. A detective was called in to collect MV's belongings. She said that MV was subsequently transported to ACH. On cross-examination, Miller testified that MV said the perpetrator was wearing a shirt with money symbols on it. She reiterated that MV told her that the man held him down by his neck and assaulted him.

Detective Eric Green of the Hope Police Department testified that he was the investigator in appellant's case. He stated that he collected two buccal swabs from MV and submitted them to the Arkansas State Crime Laboratory. He said that he retrieved the evidence from the crime lab on July 26.

Todd Lauterbach testified that when this case began, he was an investigator with the Hope Police Department and that he was assigned appellant's case. He said that he was called to Wadley to investigate MV's sexual assault. He testified that he collected MV's clothes and took them into evidence. He stated that he initiated two search warrants in this case: (1) one for records in the possession of the Arkansas Department of Health that showed appellant had been diagnosed with HIV in March 2015; and (2) one for buccal swabs from appellant, which he submitted to the crime lab. Lauterbach testified that he interviewed appellant after reading appellant his *Miranda* rights. The interview was recorded, and it was played for the jury. In the video, appellant admitted having sexual contact with someone on the date in question but insisted that he did not know that person was MV until after the fact. Appellant also claimed that MV initiated the contact. According to appellant, they performed oral sex on each other, and appellant put his finger in MV's anus. Appellant denied any penile penetration and said if there had been, he would have used a condom. Appellant admitted that he has known about his HIV status since 2015. On cross-examination, Lauterbach stated that he did not try to see if anyone else at the party on New Year's Eve was baldheaded.

Mandi Wertenberger, a senior forensic serologist and a supervisor in the physical-evidence section at the crime lab, testified that MV's underwear tested positive for semen. Clippings were taken from the underwear and submitted alone with a swab for DNA testing. On cross-examination, she stated that the tests on the underwear were performed almost a year and a half after the underwear was collected.

6

Lindsey Heflin testified that she is the forensic DNA section chief as well as a DNA analyst for the crime lab. She stated that she tested known DNA samples from MV and appellant against the semen samples found on MV's underwear. She testified that appellant's DNA was found on MV's underwear. On cross-examination, Heflin stated that she cannot tell how the DNA was deposited on the underwear. She testified that there were three DNA profiles found on MV's underwear. She also stated that she could not tell what body fluid produced the DNA profile.

Charles Steelman testified that he used to work for the Hempstead County Detention Center and was working as a detention officer there when appellant was arrested. He stated that he administered appellant's intake, including the medical-intake form. He said that on the medical form, appellant indicated he has undetectable HIV.

Appellant unsuccessfully moved for directed verdict at the end of the State's case. Appellant argued that the State had failed to introduce sufficient evidence that appellant engaged in deviant sexual activity with MV. Appellant also argued that the evidence was insufficient to show that appellant was positive for HIV at the time in question.

Appellant testified that he and Corey are half brothers. He stated that Richard is like his sister. He said that he moved to Hope on December 18, 2022, from Atlanta, Georgia, after he was robbed. He stated that he had been staying at Corey's mother's house for about a week before everything happened. He described the house as a "party house." He said that he has slept in and had sex in Corey's mother's bed before. He testified that other people had done the same. Appellant stated that he had been around MV several times over

7

the years and that MV called him "Uncle T." He said that he went out on New Year's Eve (his birthday) and had drinks. He stated that he spoke to MV earlier that night and asked if he was mad at Richard and if that was why Richard brought him and his siblings to Corey's mother's house. He stated that he returned to the house after 4:00 a.m. on New Year's Day. Appellant said that once he returned, he changed clothes and had sex with a friend in the bedroom MV alleged his assault took place in. He stated that at some point, he sat on the couch with MV and his siblings and watched television. He said that he fell asleep on the couch and was awakened by someone performing oral sex on him. He stated that he still does not know who the person was; however, he said that the person was wearing a hoodie that looked "like a flaming hot Cheetos bag." He denied seeing that hoodie on anyone before he fell asleep and denied that the hoodie taken from MV was the same hoodie he was describing. He testified that he and the person went into the bedroom and began touching each other. He said that he tried to see who the person was, but the person would not let him. According to appellant, that is how people in Hope keep their sexual preference secret, by wearing a mask. He stated that this had happened to him before at the house.

Appellant testified that he and the person were kissing and that the person had a mustache. He denied that the person was a teenage boy. He stated that from the chest hair, penis, and thighs, he knew he was dealing with a grown man. Appellant denied that the person could have been MV. He stated that the person was wearing dark sweatpants. He testified that once in the bedroom, he and the person were kissing, performing oral sex on each other, and "fingering" one another. Appellant explained that he was intoxicated and

8

under the influence, so he was not going to have "sex." Appellant said that he ejaculated in a tissue or towel, and the other person ejaculated on the floor. He stated that afterwards, he went to the bathroom and then back to the couch and fell asleep. He said that the statement he gave in his interview was the truth as he believed it, but only because Lauterbach had lied to him. However, appellant stated that as time passed, he knew he had not done anything sexual with MV. He insisted that he was telling the jury the truth. Appellant stated that when he saw MV in Richard's car later that morning, the hoodie MV was wearing was not the same as the hoodie worn by the person he had sex with.

On cross-examination, appellant testified that he is a convicted felon. He stated that he had not changed his story because he told the police from the beginning that he did not rape MV. He said that while in jail, he had nothing to do but think about what happened that night. He stated that he did not use a condom because he did not have use for one. He said that HIV could only be spread by someone whose HIV is undetectable during vaginal or anal sex. He testified that it was not uncommon for him, as a gay man, to have sex with people without knowing who they are. Appellant said that his HIV is undetectable, which means that he cannot spread HIV to anyone. He stated that he smoked marijuana and took ecstasy on his birthday. He said that he remembers what he did so clearly because it was his birthday. He stated that he may have forgotten to say that the person he had sex with that morning had a mustache, but he knows that he did not do anything to a child.

Appellant unsuccessfully renewed his motion for directed verdict. The jury found him guilty as charged and sentenced him to 110 years' imprisonment. The sentencing order was filed on August 1, and appellant filed a timely notice of appeal on August 19.

Appellant argues that there was insufficient evidence to support his convictions. He contends that there is no believable corroborating evidence to support MV's allegations that he was raped or exposed to HIV. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence.[5] When reviewing the appellant's challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict.[6] We will affirm the verdict if substantial evidence supports it.[7] Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture.[8] A victim's firsthand account of rape is not circumstantial evidence but is instead direct testimony about what the victim "saw, heard, or experienced."[9] Even standing alone, a rape victim's testimony constitutes substantial evidence to support a rape conviction.[10] In

---

[5]*Ward v. State*, 2023 Ark. 158, 676 S.W.3d 270.

[6]*Id.*

[7]*Id.*

[8]*Id.*

[9]*Doucoure v. State*, 2024 Ark. 162, at 5, 698 S.W.3d 643, 646 (quoting *Break v. State*, 2022 Ark. 219, at 4, 655 S.W.3d 303, 307).

[10]*Hale v. State*, 2025 Ark. 45, 709 S.W.3d 796.

resolving conflicting testimony and inconsistent evidence, it is the jury's role to assess witness credibility and resolve discrepancies in the evidence.[11] Further, the jury is entitled to accept the State's version of the facts over the defendant's, to resolve any inconsistent testimony, and to accept or reject any alternative theories.[12]

A minor rape victim's uncorroborated testimony regarding penetration alone is sufficient evidence to support a conviction.[13] Appellant was charged with rape of a minor under fourteen years of age. A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age.[14] Deviate sexual activity is defined as penetration, however slight, of the anus or mouth of a person by the penis of another.[15]

Appellant argues that the evidence is insufficient for a number of reasons, including the fact that MV did not initially know who he was, MV left his siblings in the house with appellant after the alleged rape, MV fought with his mother the night before, the lack of injury to MV, and the presence of a third DNA profile on MV's underwear. We disagree.

---

[11]*Id.*

[12]*Id.*

[13]*Id.*

[14]Ark. Code Ann. § 5-14-103(a)(3)(A) (Repl. 2024).

[15]Ark. Code Ann. § 5-14-101(1)(A) (Repl. 2024).

The evidence, viewed in the light most favorable to the jury's verdict, shows that MV was awakened by appellant and taken to a bedroom where oral sex was both performed by and on MV. MV also testified that appellant penetrated his anus with his penis. Although appellant denies these claims, his semen was found in MV's underwear, and he admitted he had oral sex with MV when initially questioned by the Hope Police Department. It makes no difference that there was no injury observed on MV: both his testimony and appellant's taped confession are enough to support appellant's rape conviction. Accordingly, we affirm.

To the extent that appellant's challenge is based on credibility or seeks to have us reweigh the evidence in his favor, it is the jury's role to assess credibility and weigh the evidence.[16]

Appellant makes no specific argument on appeal about knowingly exposing MV to HIV. Although he made a specific arguments at his trial, he does not raise those same arguments here, so they are abandoned and will not be considered on appeal.[17] Appellant's entire argument on appeal focuses on whether he raped MV, which we have already affirmed.

Affirmed.

WOOD and HIXSON, JJ., agree.

*Jacob Stem Potter*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.

---

[16]*Butler v. State*, 2011 Ark. App. 621.

[17]*Terry v. State*, 2024 Ark. App. 130, 684 S.W.3d 653.